523 S.E.2d 787

The STATE, Respondent,

v.

Frank Edward WEAVERLING, Appellant.

No. 3062.

Court of Appeals of South Carolina.

Heard Oct. 7, 1999.

Decided Oct. 25, 1999.

Rehearing Denied Dec. 25, 1999.

462

464

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney

General Salley W. Elliott and Assistant Attorney General G. Robert DeLoach, III, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

ANDERSON, Judge:

Frank Edward Weaverling appeals from his convictions for three counts of second degree criminal sexual conduct (CSC) with a minor and one count of disseminating harmful material to a minor. We affirm.

## FACTS/PROCEDURAL BACKGROUND

The case against Weaverling arose out of allegations he sexually abused his minor nephew, John Doe. The indictments averring the three charges of criminal sexual conduct are time dated as follows: (1) Indictment # 97–GS–46–454—"on or about December 25, 1994"; (2) Indictment # 97–GS–46–935—"on or about the end of June or the beginning of July, 1996"; and (3) Indictment # 97–GS–46–455—"on or about July 27, 1996."

Doe testified he was seven or eight years old when Weaverling began the abuse. For approximately five or six years, Weaverling performed fellatio on Doe almost every time he saw him. These incidents occurred inside Weaverling's home, both in the living room and bedroom, and in the woods and a barn near Doe's home.

Doe estimated Weaverling performed oral sex on him on more than one hundred occasions. While performing the sex acts, Weaverling often had Doe look at a pornographic magazine or watch a pornographic movie. Weaverling showed Doe nude photographs of Weaverling's wife. After completing the sexual acts, Weaverling would tell Doe, "Oh, you were great" or "Oh, you were good." He told Doe not to tell other people about their "secret."

On December 25, 1994, Doe took his Christmas dinner up to his tree house to eat. About five minutes later, Weaverling came up to the tree house. Doe said Weaverling then "unfastened my pants and started sucking on my peter." When Doe's mother called his name, Doe pulled up his pants and ran to the house.

Approximately one to two weeks passed before Weaverling touched Doe again. In January of 1995, Weaverling touched Doe three or four times while the two were at Weaverling's home. During these incidents, Weaverling showed Doe a "dirty" magazine.

For the next year and a half, Weaverling did not touch Doe sexually. In late June or early July of 1996, the abuse resumed. A few days before Doe left to visit his father for the 4th of July, Weaverling asked Doe to babysit his two sons. That night, Doe slept in the living room of Weaverling's house. Doe awoke to find a naked Weaverling had pulled down Doe's shorts and was performing oral sex on Doe. When Doe asked Weaverling to stop, he complied, put on his robe, and walked away. Weaverling's wife and children were asleep during the incident.

In late July of 1996, Doe agreed to babysit Weaverling's children. Doe fell asleep on the couch in Weaverling's living room and woke to find Weaverling performing oral sex on him. This time when Doe asked Weaverling to stop, Weaverling stopped, but "acted like he was mad and went back to his room."

Doe was scared to tell anyone what his uncle was doing to him. He did not tell anyone about the abuse until a couple of weeks after the late July incident of abuse by Weaverling. At that time, Doe got in trouble for performing oral sex on his three year old male cousin.[1] When Doe's mother asked him why he molested his cousin, Doe said "because it had been done to him . . . he thought it was all right."

Doe remembered Weaverling kept the pornographic magazine under his bed, the movie in his dresser, and the photographs of his wife in her makeup drawer. With this information, the police obtained and executed a search warrant on Weaverling's home. Officers discovered the pornographic magazine and an x-rated movie, but did not find nude photographs of Weaverling's wife, although she helped in the search for them. Doe identified a pornographic magazine police seized from Weaverling's home as the magazine Weaverling showed him.

---

1. The cousin Doe admits abusing is not Weaverling's child.

Weaverling denied the charges against him. He maintained he caught Doe performing oral sex on one of his sons in July of 1996, but agreed to not tell anyone if Doe promised not to do it again. Weaverling told no one about this incident until the police questioned him regarding Doe's allegations.

Weaverling was found guilty of all charges. He was sentenced to fifteen years for each of the CSC convictions, and five years for the dissemination of harmful material to a minor conviction, with all sentences running concurrently.

## ISSUES

I. Did the trial court err in admitting evidence of uncharged sexual misconduct allegedly committed by Weaverling on Doe?

II. Did the trial court err in excluding the testimony of a defense witness regarding Weaverling's character for truthfulness?

III. Did the trial court err in allowing expert witness testimony that it was "not uncommon" for past victims of sexual abuse to become offenders themselves?

## LAW/ANALYSIS

### I. Evidence of Other Bad Acts

Weaverling argues the trial court erred in admitting evidence of uncharged sexual misconduct allegedly committed by Weaverling on Doe. He maintains the evidence does not fall within any of the *Lyle*[2] exceptions to the general ban on other bad acts evidence. We disagree.

Generally, South Carolina law precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). *See also* Rule 404(b), SCRE (evidence of other crimes, wrongs, or acts is not admissible to prove character of person in order to show action in conformity therewith). Such evidence is admissible, however, when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission

---

2. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

of two or more crimes so related to each other that proof of one tends to establish the others, or the identity of the perpetrator. *State v. Hough*, 325 S.C. 88, 480 S.E.2d 77 (1997); *Lyle, supra;* Rule 404(b), SCRE. If not the subject of a conviction, proof of prior bad acts must be clear and convincing. *State v. Pierce*, 326 S.C. 176, 485 S.E.2d 913 (1997).

In the case of the common scheme or plan exception under *Lyle*, a close degree of similarity or connection between the prior bad act and the crime for which the defendant is on trial is necessary. *State v. Cutro*, 332 S.C. 100, 504 S.E.2d 324 (1998). The trial judge must balance the probative value of the evidence of other crimes or bad acts against its prejudicial effect. *State v. Parker*, 315 S.C. 230, 433 S.E.2d 831 (1993). Where the evidence is of such a close similarity to the charged offense that the previous act enhances the probative value of the evidence so as to overrule the prejudicial effect, it is admissible. *State v. Raffaldt*, 318 S.C. 110, 456 S.E.2d 390 (1995). Even if the evidence is clear and convincing and falls within a *Lyle* exception, the judge must exclude it if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *State v. King*, 334 S.C. 504, 514 S.E.2d 578 (1999); *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996); Rule 403, SCRE. The decision to admit contested evidence rests within the sound discretion of the trial judge. *State v. Wyatt*, 317 S.C. 370, 453 S.E.2d 890 (1995).

Initially, we reject the State's argument that Weaverling failed to preserve this issue. The State argues Weaverling failed to state grounds for the exclusion of the evidence and failed to argue the evidence did not fit within an exception to the general rule excluding evidence of other bad acts. Weaverling requested the court exclude any evidence of prior bad acts. Weaverling did not argue its inadmissibility under any exception to *Lyle*. The court entertained a proffer and argument on the challenged testimony's admissibility. Reference to the general rule was sufficient. *See* Rule 103(a)(1), SCRE (requiring only "a timely objection or motion to strike ... stating the specific ground of objection, if the specific ground [is] not apparent from the context.").

■ We find Doe's testimony regarding the pattern of sexual abuse he suffered by Weaverling to be quintessential common scheme or plan evidence. Evidence of a defendant's prior and subsequent illicit sexual activities when closely similar to the charged offense is admissible. In *State v. Richey,* 88 S.C. 239, 70 S.E. 729 (1911), our Supreme Court held admissible evidence that a man charged with carnal knowledge of a girl under fourteen continued his illicit relationship with the child past her fourteenth birthday. The court ruled " 'acts prior and also subsequent to the act charged in the indictment, when indicating a continuousness of illicit intercourse, are admissible in evidence as showing the relation and mutual disposition of the parties.' " *Id.* at 242, 70 S.E. at 730.

■ The common scheme or plan exception "is generally applied in cases involving sexual crimes, where evidence of acts prior and subsequent to the act charged in the indictment is held admissible as tending to show continued illicit intercourse between the same parties." *State v. Whitener,* 228 S.C. 244, 265, 89 S.E.2d 701, 711 (1955). Such evidence is admissible when the " 'close similarity of the charged offense and the previous act[s] enhances the probative value of the evidence so as to overrule the prejudicial effect.' " *State v. McClellan,* 283 S.C. 389, 392, 323 S.E.2d 772, 774 (1984). In *McClellan,* the Court addressed the admissibility of testimonial evidence of appellant's pattern of sexual attacks against each of his three daughters in his trial for criminal sexual conduct against the youngest daughter. The Court allowed the youngest daughter to testify the appellant had attacked her on previous occasions, even though the appellant was not charged for the previous attacks. The Court held the "prosecutrix's testimony regarding prior attacks was admissible under [the common scheme] exception to show the continued illicit intercourse forced upon her by Appellant." *Id.* at 392, 323 S.E.2d at 774.

Additionally, the Court found the testimony of the other daughters concerning prior misconduct was admissible. The experiences of each of the three daughters paralleled that of her sisters: the initial attack occurred around the time each girl reached age twelve; appellant entered their bedroom late at night and chose one of them who he would then take to his bedroom where she would be forced to submit; he gave to

each the same explanation for his actions—that he was "teaching them how to be with their husbands"; and he quoted to each a specific Bible verse during the attacks. *Id.* at 391, 323 S.E.2d at 773. The Court concluded the evidence fell squarely within the common scheme or plan exception.

Likewise, in *State v. Hallman,* 298 S.C. 172, 379 S.E.2d 115 (1989), our Supreme Court held the trial court did not err in admitting evidence of appellant's sexual abuse of three of his former foster daughters in his criminal sexual conduct trial for abuse of a fourth foster daughter. The challenged evidence included the testimony of two sisters who were foster children in the Hallman home for five years. Shortly after they were placed in his care, appellant rubbed the girls' bodies outside their clothing. He then began digital penetration and forced each girl to rub his penis. Another young woman testified that when she lived with appellant at the age of four, he forced her to rub his penis on four occasions. The charges against the appellant included, but went beyond, the type of acts testified to by the other young women. Finding the evidence of the other acts admissible, the Court explained the abuse against the victim "commenced ... in exactly the same manner under similar circumstances" as the abuse of the other foster children. *Id.* at 175, 379 S.E.2d at 117. The Court determined "the evidence of prior bad acts bears such a close similarity to the offense charged in this case that its probative value clearly outweighs its prejudicial effect." *Id.* at 175, 379 S.E.2d at 117.

The appellant in *State v. Blanton,* 316 S.C. 31, 446 S.E.2d 438 (Ct.App.1994), claimed the trial court erred in admitting the testimony of two females in his trial for criminal sexual conduct against his granddaughter. He argued the alleged prior bad acts were not closely similar to the charged offense. In their testimony, the females indicated they had been sexually molested by appellant at approximately the same age and in the same manner as appellant's granddaughter. The Court held: "In each instance, [appellant] took advantage of his relationship with the victim for his sexual gratification. The prior acts were sufficiently similar to the charged offense to be admissible." *Id.* at 33, 446 S.E.2d at 439.

More recently, in *State v. Adams*, 332 S.C. 139, 504 S.E.2d 124 (Ct.App.1998), the trial court's admission of appellant's stepdaughter's testimony, detailing eight years of extensive sexual abuse which mirrored the charged allegations made by another stepdaughter, was upheld under the common scheme or plan exception. The appellant used his relationship as stepfather to control both stepdaughters and engaged in similar conduct as to each. The Court announced the specifics were so similar "that proof of one tended to prove the other" and the close similarity of the other bad act evidence to the charged offense enhanced the probative value so that it outweighed the prejudicial effect. *Id.* at 143, 504 S.E.2d at 126.

■ In the case *sub judice*, Weaverling faced charges that he performed fellatio on Doe on three occasions and gave Doe a pornographic magazine to look at on one occasion. Evidence of these incidents demonstrated: (1) Weaverling initiated the sexual contact by pulling down Doe's pants or shorts; (2) he obtained sexual gratification by having the child review pornography; (3) beginning when Doe was seven or eight years old, almost every time they saw one another, Weaverling would get Doe alone, pull down Doe's pants, and perform oral sex on Doe; and (4) Weaverling would have Doe look at a pornographic magazine or movie during the sexual assaults. The challenged testimonial evidence of Weaverling's prior bad acts shows the same illicit conduct with the same victim under similar circumstances over a period of several years. The probative value of the evidence regarding Weaverling's prior bad acts clearly outweighs the prejudicial effect of admitting the evidence. As the Court concluded in *State v. McClellan*, 283 S.C. 389, 392, 323 S.E.2d 772, 774 (1984), "[i]t would be difficult to conceive of a common scheme or plan more within the plain meaning of the exception than that presented by this evidence."

■ Moreover, the State introduced, without objection, Doe's statement to the police. The statement contained the same information as the challenged testimony and included more details. Weaverling does not appeal the admission of Doe's statement. Doe's testimony is cumulative to this statement. The admission of improper evidence is harmless when it is merely cumulative to other evidence. *State v. Tucker*, 320

S.C. 206, 464 S.E.2d 105 (1995). *See also State v. Williams,* 321 S.C. 455, 469 S.E.2d 49 (1996) (error in admission of evidence is harmless where it is cumulative to other evidence which was properly admitted). Therefore, if there was error, it was harmless.

## II. Evidence of Character for Truthfulness

 Next, Weaverling asserts the trial court erroneously excluded testimonial evidence of his character for truthfulness, "such error being harmful in this case where [Weaverling's] credibility was critical." We disagree.

Weaverling presented the testimony of John Workman in support of his character for truthfulness. The following occurred:

Q. And what is [Weaverling's] reputation for truthfulness?
A. He's always been truthful with me. Any of our acquaintances, I don't think you could get any of them to say that he would tell you a lie.
[The State]: Objection to what somebody else would say.
The Court: I sustain the objection. He doesn't know what other people would say, so disregard that.
Q. But based on your dealings, his reputation is what?
A. Straight-up guy.

The State argues this issue is procedurally barred because the court did not strike Workman's original answer, but merely sustained the objection. Without addressing the substance of the State's argument, we note the court ordered the jury to "disregard that" after sustaining the State's objection.

 A defendant does not have an automatic right to introduce evidence of his character for truthfulness simply because he has testified in his defense. *State v. Mizell,* 332 S.C. 273, 504 S.E.2d 338 (Ct.App.1998). Evidence of a defendant's truthful character can become admissible when his character for truthfulness has been attacked. *Id.* Otherwise, in order for a defendant's character for truthfulness to be admissible, truthfulness must be "a trait pertinent to the offense charged." *Mizell,* 332 S.C. at 280, 504 S.E.2d at 342. *See also* Rule 404(a)(1), SCRE (evidence of a person's character or trait of character is not admissible for the purpose of

proving action in conformity therewith on a particular occasion, except evidence of a pertinent trait of character offered by an accused). The reason for this rule is that character evidence is, at best, of little probative value. *Mizell, supra.*

Although Weaverling took the stand, the State did not attack his character for truthfulness. Further, evidence of Weaverling's truthful character was not admissible as pertinent to the offenses with which he was charged. The defendant in *Mizell* was charged with committing a lewd act upon a child and CSC with a minor. The Court found Mizell's character for truth and veracity was not a trait pertinent to those offenses. Similarly, the evidence Weaverling sought to introduce was not admissible.

Yet, after the court sustained the State's objection, Weaverling's counsel rephrased the question and Workman testified Weaverling's reputation was that of a "straight-up guy." Thus, despite the court's ruling, Weaverling succeeded in introducing the desired evidence.

■ Furthermore, four other witnesses testified to Weaverling's good reputation for truthfulness. Because the jury heard considerable testimony about Weaverling's reputation for truthfulness, the evidence in question was cumulative and no prejudice resulted from its exclusion. *State v. Ferguson,* 300 S.C. 408, 388 S.E.2d 642 (1990) (any error in excluding evidence is harmless where the evidence is cumulative to other evidence in the record).

### III. Behavioral Evidence

■ Finally, Weaverling challenges the admission of a social worker's testimony where the social worker never interviewed or met Doe, the testimony was irrelevant, and the probative value was clearly outweighed by its prejudicial effect. We find the court properly admitted the testimony.

The court qualified social worker Bonnie Mooney as an expert in the field of victims of sexual abuse. Mooney's knowledge of the case was limited to her discussions with the Solicitor's office. She never met or interviewed Doe. The following colloquy occurred during the State's direct examination of Mooney:

Q: Ms. Mooney, based on your training and experience, is it uncommon for past victims of sexual abuse to become offenders themselves?

A: That's not uncommon.

On cross-examination, defense counsel asked Mooney: "Is it common for those that have—that abuse to have been abused?" Mooney responded: "Yes, that's very common." She did not testify specifically regarding Doe or the facts of the case.

■■■■■■ Initially, we note Weaverling has not challenged Mooney's testimony by claiming the record lacked sufficient evidence to support her expert opinion in this case. "An expert may give an opinion based upon personal observations or in answer to a properly framed hypothetical question that is based on facts supported by the record." *State v. Evans,* 316 S.C. 303, 311, 450 S.E.2d 47, 52 (1994). After a witness has been qualified as an expert, any challenge to the adequacy of the expert's knowledge goes to the weight of the testimony, rather than to its admissibility. *See State v. Von Dohlen,* 322 S.C. 234, 471 S.E.2d 689 (1996); *State v. Nathari,* 303 S.C. 188, 399 S.E.2d 597 (Ct.App.1990).

■■■■■■ The question of whether to admit or exclude testimony of an expert witness is within the discretion of the trial court. *Von Dohlen, supra.* Absent clear abuse of discretion amounting to an error of law, the trial court's ruling will not be disturbed on appeal. *Creed v. City of Columbia,* 310 S.C. 342, 426 S.E.2d 785 (1993).

■■■■■■ Here, the challenged testimony is behavioral evidence concerning rape trauma. "[B]oth expert testimony and behavioral evidence are admissible as rape trauma evidence to prove a sexual offense occurred where the probative value of such evidence outweighs its prejudicial effect." *State v. Schumpert,* 312 S.C. 502, 506, 435 S.E.2d 859, 862 (1993). Expert testimony concerning common behavioral characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible. *See Frenzel v. State,* 849 P.2d 741 (Wyo.1993). *See also State v. Lujan,* 192 Ariz. 448, 967 P.2d 123 (1998) (opinion testimony describing behavioral characteristics outside jurors' common experience is permitted as long as it meets other admissibility

requirements). Such testimony is relevant and helpful in explaining to the jury the typical behavior patterns of adolescent victims of sexual assault. *Frenzel, supra.* It assists the jury in understanding some of the aspects of the behavior of victims and provides insight into the sexually abused child's often strange demeanor. *Id. See also Lujan, supra* (when facts of case raise questions of credibility or accuracy that might not be explained by experiences common to jurors—like reactions of child victims of sexual abuse—expert testimony on general behavioral characteristics of such victims should be admitted).

■ There is no requirement the sexual assault victim be personally interviewed or examined by the expert before the expert can give behavioral evidence testimony. The fact that the expert does not personally interview the victim bears on the weight of the behavioral evidence not on its admissibility. *See Henson v. State*, 535 N.E.2d 1189 (Ind.1989). Such facts may be brought out by opposing counsel on cross-examination. *Id.*

■ In the instant case, the evidence simply explained the effect of prior molestation on a person's subsequent conduct—that it is "very common" for a victim of sexual abuse to become a sexual offender. The fact that Doe molested another boy in the same manner he alleged Weaverling molested him enhances the probative value of Mooney's testimony such that it outweighs the prejudicial effect. The testimony was relevant and was properly admitted.

## CONCLUSION

We conclude the trial court did not err in admitting evidence of uncharged sexual misconduct allegedly committed by Weaverling on Doe. The evidence fell within the *Lyle* common scheme or plan exception. Further, we hold evidence of a defendant's character for truthfulness and veracity is admissible under Rule 404(a)(1), SCRE, *only* where (1) truthfulness is "a trait pertinent to the offense charged" or (2) the defendant's character for truthfulness has been attacked. Finally, the trial court properly allowed expert witness testimony that it was "not uncommon" for past victims of sexual abuse to

become offenders themselves. Accordingly, Weaverling's convictions are

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.