775 S.E.2d 51

**The STATE, Respondent,**

v.

**Stephen Douglas BERRY, Appellant.**

**Appellate Case No. 2013–000435.**

**No. 5329.**

Court of Appeals of South Carolina.

Heard April 14, 2015.

Decided July 15, 2015.

League B. Creech, of Peters Murdaugh Parker Eltzroth & Detrick, PA, of Hampton, and Chief Appellate Defender, Robert Michael Dudek, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson and Assistant Attorney General, William M. Blitch, Jr., both of Columbia, for respondent.

LOCKEMY, J.

Stephen Douglas Berry appeals his conviction for second-degree criminal sexual conduct (CSC) with a minor. Berry argues the trial court erred in (1) allowing subsequent bad act testimony and (2) failing to suppress expert testimony regarding the victim's behavior and symptoms of post-traumatic stress disorder. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Berry was indicted by the Union County Grand Jury for second-degree CSC with a minor in July 2012. A jury trial was held February 5–8, 2013.

At trial, the victim testified she met Berry at New Life Baptist Church where he served as a youth pastor. In May 2010, Berry and his daughter, a friend of the victim, moved to a home near the then fifteen-year-old victim. The victim testified that after church one Sunday in May 2010, she

accepted a ride to her home from Berry. Instead, Berry took her to his previous residence telling her he had to pick up some items. The victim stated that once inside, she went to Berry's daughter's room. According to the victim, Berry then came up behind her, hugged her, and touched her behind. After a brief conversation, the victim testified Berry again approached her, hugged her, and told her she was beautiful. He then began rubbing her legs and unbuttoned and unzipped her pants. The victim stated she pushed Berry away, but he came back and pulled her pants and underwear down and placed his finger inside her vagina. Thereafter, the victim testified that after briefly walking away, Berry began walking toward her again while unbuttoning and unzipping his pants. The victim stated Berry turned her around and attempted to sodomize her. The victim further explained that after she was able to prevent him from doing so several times, Berry went to another part of the room and masturbated.

The victim testified that one week later, Berry invited her to his new home. Once inside, the victim stated Berry placed his finger inside her vagina. She testified she resisted several times and "eventually gave in because there was no use in even trying to stop it."

The victim testified to more incidents of sexual abuse by Berry at his home and at her home. She testified these incidents occurred at least once a week during the 2010–2011 school year. The victim then explained that in the fall of 2010 Berry put his penis inside her vagina while she was watching a movie at his home and told her she "wasn't a virgin anymore." Over defense counsel's objection, the victim testified Berry continued to digitally penetrate her at various times for four months after she turned sixteen. The victim stated the incidents which took place after she turned sixteen occurred without her consent.

The State called Kim Roseborough, a psychotherapist and social worker, as a witness. The trial court found Roseborough qualified to testify as an expert in the field of child sexual abuse assessment and treatment. Roseborough testified she counseled the victim following the victim's disclosure of sexual abuse. According to Roseborough, she "noticed several things about [the victim's] demeanor, including many

symptoms related to trauma." Roseborough testified the victim was avoidant, agitated, depressed, angry, and had feelings of guilt and hopelessness. The State asked Roseborough whether, based on her experience and training, the victim's disclosure was consistent with the disclosure of sexual abuse. Citing *State v. Kromah,* 401 S.C. 340, 737 S.E.2d 490 (2013), Berry's counsel objected, arguing that asking Roseborough to comment in such a manner would require her to comment on whether she believed the victim. Following a discussion with counsel outside the jury's presence, the judge sustained the objection. Later in Roseborough's testimony, Berry's counsel objected to testimony regarding the typical symptoms exhibited by children who have been sexually abused and are suffering from post-traumatic stress disorder (PTSD). The court overruled the objection off the record. Later in the trial, Berry's counsel placed his prior objection on the record, arguing Roseborough was not qualified to diagnose PTSD. Roseborough testified it was her opinion that the victim suffered from PTSD and referred her to a psychiatrist.

The jury found Berry guilty, and he was sentenced to fifteen years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

██ "In criminal cases, an appellate court sits to review only errors of law, and it is bound by the trial court's factual findings unless the findings are clearly erroneous." *State v. Black,* 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012). "The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *Id.* "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Id.*

## LAW/ANALYSIS

### I. Bad Act Evidence

██ Berry argues the trial court erred in allowing the victim to testify as to the acts of sexual abuse committed after she turned sixteen. Berry maintains these acts exceeded the scope of the indictment for second-degree CSC with a minor. Berry also contends (1) the victim's testimony regarding the

acts was not relevant; (2) the acts were not criminal in nature; (3) the testimony was inadmissible under Rule 404(b) SCRE; and (4) the testimony's probative value was outweighed by its prejudicial effect.

Generally, South Carolina law precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923); *see also* Rule 404(b), SCRE (evidence of other crimes, wrongs, or acts is not admissible to prove character of person in order to show action in conformity therewith). To admit evidence of prior bad acts, the circuit court must first determine whether the proffered evidence is relevant. *State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. If the trial court finds the evidence is relevant, the court must then determine whether the bad act evidence is admissible under Rule 404(b) of the South Carolina Rules of Evidence. *Clasby*, 385 S.C. at 154, 682 S.E.2d at 895. Rule 404(b) precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged, except to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the perpetrator. *See* Rule 404(b), SCRE.

"Once bad act evidence is found admissible under Rule 404(b), the trial court must then conduct the prejudice analysis required by Rule 403, SCRE." *State v. Wallace*, 384 S.C. 428, 435, 683 S.E.2d 275, 278 (2009). Pursuant to Rule 403, "relevant[ ] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. "Unfair prejudice means an undue tendency to suggest [a] decision on an improper basis." *State v. Gilchrist*, 329 S.C. 621, 627, 496 S.E.2d 424, 427 (Ct.App.1998).

Berry first argues the victim's testimony regarding abuse that occurred after she turned sixteen is not relevant because any acts which occurred after she turned sixteen were not criminal. We disagree. The victim testified Berry digitally penetrated her without her consent after she turned sixteen. As a result, Berry's actions were criminal.

Berry also argues the trial court erred in allowing testimony that the abuse continued beyond the dates set forth in the indictment. Berry notes testimony that exceeds the scope of the indictment is only permitted if it satisfies one of the exceptions found in Rule 404(b), SCRE. Berry asserts that assuming the victim's testimony was relevant; it was inadmissible because it did not relate to an exception set forth in Rule 404(b), SCRE. He contends the trial court erred in finding the victim's testimony was admissible as evidence of a common scheme or plan. The State argues the victim's testimony established the basis for the delay between the victim turning sixteen and the date she reported the abuse. The State also contends the victim's testimony was properly admitted as evidence of a common scheme or plan.

We believe the trial court properly admitted the victim's testimony as evidence of a common scheme or plan. *See Clasby,* 385 S.C. at 155, 682 S.E.2d at 896 ("Where there is a close degree of similarity between the crime charged and the prior bad act, both this [c]ourt and the [c]ourt of [a]ppeals have held prior bad acts are admissible to demonstrate a common scheme or plan.") (quoting *State v. Gaines,* 380 S.C. 23, 30, 667 S.E.2d 728, 731 (2008)). The victim's testimony in this case established the incidents of abuse occurred in the same manner and in the same locations as the conduct that formed the basis of the charge of CSC with a minor brought against Berry. *See State v. Whitener,* 228 S.C. 244, 265, 89 S.E.2d 701, 711 (1955) (recognizing that the common scheme or plan exception "is generally applied in cases involving sexual crimes, where evidence of acts prior and subsequent to the act charged in the indictment is held admissible as tending to show continued illicit intercourse between the same parties"); *State v. McClellan,* 283 S.C. 389, 392, 323 S.E.2d 772, 774 (1984) (concluding that victim's testimony regarding prior attacks by defendant, which were not the subject of an indictment, was properly admitted under the common scheme or

plan exception in trial for CSC with a minor, second degree where testimony showed "the continued illicit intercourse forced upon her by [defendant]"); *State v. Weaverling,* 337 S.C. 460, 471, 523 S.E.2d 787, 792–93 (Ct.App.1999) (finding victim's testimony regarding pattern of sexual abuse he suffered by the defendant was properly admitted as part of a common scheme or plan exception in trial for CSC with a minor and disseminating harmful material to a minor where the "challenged testimonial evidence of [defendant's] prior bad acts show[ed] the same illicit conduct with the same victim under similar circumstances over a period of several years").

Finally, Berry maintains that assuming the victim's testimony is relevant and falls within an exception in Rule 404(b), SCRE; it is still not admissible because any probative value is substantially outweighed by the danger of unfair prejudice. The trial court stated that after balancing the probative value of the victim's testimony and its prejudicial effect, it found the probative value was not substantially outweighed by any prejudicial effect. Berry argues it is unfairly prejudicial to allow testimony regarding non-criminal acts to bolster evidence of alleged criminal acts. We disagree. As discussed above, Berry's actions were criminal. Furthermore, the victim's testimony need not be criminal to be admissible to demonstrate a common scheme or plan. Rule 404(b), SCRE, specifically applies to "[e]vidence of other crimes, wrongs, or acts." Rule 404(b), SCRE (emphasis added). We agree with the trial court's finding that the probative value of the victim's subsequent bad act testimony was not substantially outweighed by any prejudice resulting from its admission. The testimony regarding the continuous and similar illegal conduct in this case was probative to establish the CSC with a minor charge. *See Clasby,* 385 S.C. at 158–59, 682 S.E.2d at 898 ("Given there was no physical evidence to corroborate [the victim's] testimony regarding the indicted offenses of CSC with a minor, first degree and lewd act upon a child, we find her testimony of Clasby's sustained illicit conduct was extremely probative to establish the charged criminal sexual conduct underlying the offense of lewd act upon a child.").

Accordingly, we find the trial court did not abuse its discretion in admitting the victim's testimony regarding Berry's

subsequent bad acts. The victim's testimony was relevant, probative, and evidence of a common scheme or plan.

## II. Expert Testimony

Berry argues the trial court erred in admitting testimony from Roseborough, the State's expert witness, regarding behaviors observed in the victim and the symptoms of PTSD. He contends Roseborough's testimony constituted vouching or bolstering and was a violation of *State v. Kromah,* 401 S.C. 340, 737 S.E.2d 490 (2013).

 Rule 702, SCRE, which governs the admission of expert testimony, provides:

If scientific technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"[E]ven though experts are permitted to give an opinion, they may not offer an opinion regarding the credibility of others." *Kromah,* 401 S.C. at 358, 737 S.E.2d at 499. "The assessment of witness credibility is within the exclusive province of the jury." *State v. McKerley,* 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct.App.2012). Consequently, "it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter." *Kromah,* 401 S.C. at 358–59, 737 S.E.2d at 500.

In *Kromah,* our supreme court held forensic interviewers should avoid (1) stating the child was instructed to be truthful; (2) offering "a direct opinion on the child's veracity or tendency to tell the truth"; (3) indirectly vouching for the child, "such as stating the interviewer has made a 'compelling finding' of abuse"; (4) indicating "the interviewer believes the child's allegations in the current matter"; or (5) opining "child's behavior indicated the child was telling the truth." 401 S.C. at 360, 737 S.E.2d at 500. The *Kromah* court held forensic interviewers may testify regarding, among other things, the following: (1) "the time, date, and circumstances of the interview"; (2) "any personal observations regarding the child's behavior or demeanor"; or (3) "a statement as to

events that occurred within the personal knowledge of the interviewer." *Id.*

## A. Preservation

The State maintains any argument regarding vouching or a violation of the directives in *Kromah* is not preserved for our review.

During Roseborough's testimony, Berry's counsel objected to the State's question of whether "the circumstances of [the victim's] disclosure . . . [were] consistent with the disclosure of sexual abuse." Berry's counsel referenced *Kromah* and stated:

> In this case, Your Honor, the court expressly addressed this forensic interviewer's comments regarding her assessment of the demeanor of essentially in this case what is a child victim's demeanor and how it relates to whether that child was believable in a disclosure of sexual abuse. It is an extensive recitation of how that forensic interview [sic] was certified as an expert in forensic interviewing and how even though the person was qualified as an expert that does not allow that person to comment on anything involving the credibility of a witness.
>
> It further does caution that there are certain statements that should be avoided at trial, one of which is any statement to indicate to a jury that the interviewer believes the child's allegations in the current matter.
>
> It is our concern, Your Honor, that should Ms. Roseborough testify, as the State has ask [sic] her to do, that her disclosure, to mean the victim's disclosure is . . . consistent or inconsistent with the disclosure of sexual abuse.
>
> That is asking Ms. Roseborough to comment in a manner that would require her to comment on whether she believes [the victim's] allegations in this matter involved in this case when our Supreme [sic] has determined this an improper comment.

The trial court sustained the objection. The trial court continued to sustain the same objection based on *Kromah* and prohibited the State from exploring areas which could result in vouching or impermissible bolstering of the victim.

Thereafter, the State questioned Roseborough regarding symptoms of trauma seen in child sexual abuse victims and the symptoms of PTSD. Berry's counsel objected and an off the record conference was held. Later, counsel placed her objection on the record, stating her objection went to Roseborough's qualifications to diagnose PTSD because she was a social worker and not a medical doctor. The trial court overruled the objection.

Subsequently, the following exchange occurred:

The State: Okay. Are there any specific trauma symptoms that children would tend to show following a sexual assault?

Roseborough: Yes.

Q: And what are those or some of those?

A: Some of those would be hyper-vigilance. A very exaggerated, startled response. There could be distressing intrusive thoughts about the event that occurred. These can sometimes cause really significant problems with concentration because they are having intrusive thoughts and they are not able to get the event out of their mind. A lot of people can have and one of the symptoms certainly is agitation, outbursts of anger. They also can have feelings of detachment that lead to very significant depression and anxiety and the symptoms that would go along with both of those; lack of sleep, problems with appetite. Those types of things.

Q: And in regards to any of your treatment of [the victim], did you make observations and form opinions as to specific symptoms of trauma suffered by her?

A: Yes.

Q: And what were those?

A: Over time [the victim] became much more agitated and had a lot of feelings of guilt and separation and detachment from her family. She became increasingly more angry and had some ——

Defense Counsel: Your Honor, I'm going to object. The Court: I overrule your objection. Go ahead.

Roseborough: Thank you. Had some very violent outbursts toward people in her family, her dad and her brothers. And she became more withdrawn. She had a lot of

feelings of loneliness and detachment. She became so clinically depressed that I was concerned about her and referred her to a psychiatrist.

The State argues Berry's counsel did not address vouching, bolstering, or *Kromah* in her objection regarding Roseborough's testimony as to trauma symptoms and PTSD. Therefore, the State contends Berry's argument on appeal is not preserved. *See State v. Freiburger,* 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (holding an issue not preserved when one ground is raised to the trial court and another ground is raised on appeal). Berry maintains the specific ground of his objection was apparent from the context, given the line of questioning contained in the above exchange and the previous discussion of *Kromah.* We agree with Berry and find his argument is preserved for our review.

## B. Merits

We find the trial court did not abuse its discretion in allowing Roseborough to testify regarding behaviors she observed in the victim and the symptoms of PTSD. *See State v. White,* 382 S.C. 265, 269, 676 S.E.2d 684, 686 (2009) ("A trial court's decision to admit or exclude expert testimony will not be reversed absent a prejudicial abuse of discretion."). Furthermore, we find Roseborough's testimony did not impermissibly vouch for or bolster the victim's testimony.

Our courts have examined behavioral testimony in several cases. Initially, in *State v. Hudnall,* 293 S.C. 97, 359 S.E.2d 59 (1987), our supreme court held expert testimony regarding common behavioral characteristics exhibited by child victims of sexual abuse was not admissible to establish abuse had occurred. The court held this evidence was admissible only to rebut a defense claim that the victim's response was inconsistent with such a trauma. *Id.* at 100–01, 359 S.E.2d at 61–62. In *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993), our supreme court considered expert testimony regarding rape trauma syndrome. The supreme court overturned its holding in *Hudnall,* and found: "both expert testimony and behavioral evidence are admissible as rape trauma evidence to prove a sexual offense occurred where the probative value of such

evidence outweighs its prejudicial effect." 312 S.C. at 506, 435 S.E.2d at 862.

This court addressed similar behavior testimony in *State v. Weaverling,* 337 S.C. 460, 523 S.E.2d 787 (Ct.App.1999). In *Weaverling,* an expert testified regarding behavior and characteristics of a sexually abused victim. This court found "[e]xpert testimony concerning common behavioral characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible." *Id.* at 474–75, 523 S.E.2d at 794 (citing *Frenzel v. State,* 849 P.2d 741 (Wyo.1993); *State v. Lujan,* 192 Ariz. 448, 967 P.2d 123 (1998) (opinion testimony describing behavioral characteristics outside jurors' common experience is permitted as long as it meets other admissibility requirements)). This court explained:

> Such testimony is relevant and helpful in explaining to the jury the typical behavior patterns of adolescent victims of sexual assault. *Frenzel, supra.* It assists the jury in understanding some of the aspects of the behavior of victims and provides insight into the sexually abused child's often strange demeanor. *Id. See also Lujan, supra* (when facts of case raise questions of credibility or accuracy that might not be explained by experiences common to jurors-like reactions of child victims of sexual abuse-expert testimony on general behavioral characteristics of such victims should be admitted).

*Weaverling* at 475, 523 S.E.2d at 794.

Roseborough's testimony explained the common behaviors and characteristics of a child sexual trauma victim. We find such testimony is admissible under *Schumpert* and *Weaverling.* Furthermore, Roseborough's testimony regarding behaviors she witnessed in the victim was proper because it was based on her personal observations.

As to Berry's argument that Roseborough's testimony constituted vouching or bolstering and was a violation of *Kromah,* we disagree. The supreme court in *Kromah* explained: "Our courts have previously held that '[t]he assessment of witness credibility is within the exclusive province of the jury,' and that witnesses generally are 'not allowed to testify whether

another witness is telling the truth.' " 401 S.C. at 358, 737 S.E.2d at 499–500 (quoting *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct.App.2012)). This court recently found:

> Improper bolstering occurs when an expert witness is allowed to give his or her opinion as to whether the complaining witness is, telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror. *State v. Douglas*, 367 S.C. 498, 521, 626 S.E.2d 59, 71 (Ct.App.2006), *rev'd in part on other grounds*, 380 S.C. 499, 671 S.E.2d 606 (2009). Generally, the prohibition against bolstering is for the purpose of preventing a witness from testifying whether another witness is telling the truth and to maintain 'the assessment of witness credibility ... within the exclusive province of the jury.' *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct.App.2012).

*State v. Taylor*, 404 S.C. 506, 514–15, 745 S.E.2d 124, 128 (Ct.App.2013).

We find Roseborough's testimony did not invade the province of the jury or serve as a comment on the credibility or veracity of the victim. Roseborough testified to observed behaviors; testimony which is specifically allowed under *Kromah*. *Kromah*, 401 S.C. at 360, 737 S.E.2d at 500 (allowing witness to testify to "any personal observations regarding the child's behavior or demeanor"). Roseborough never indicated in her testimony whether she believed the victim was telling the truth regarding the sexual abuse.

## CONCLUSION

The trial court did not abuse its discretion in admitting subsequent bad act testimony and allowing expert testimony regarding the victim's behavior.

SHORT and McDONALD, JJ., concur.