# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Richard Kenneth Galloway, Appellant.

Appellate Case No. 2018-001806

Appeal From Greenville County
Perry H. Gravely, Circuit Court Judge

Opinion No. 5905
Heard December 6, 2021 – Filed April 20, 2022

**AFFIRMED**

Appellate Defender Joanna K. Delany, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General David A. Spencer, of
Columbia, and Solicitor William W. Wilkins, III, of
Greenville, for Respondent.

**THOMAS, J.:** Richard Kenneth Galloway appeals his convictions of criminal
sexual conduct with a minor in the first degree and lewd act upon a child, arguing
the trial court erred in (1) limiting the testimony of his expert witness, (2) allowing
the State's expert witness to testify about risk factors for childhood sexual abuse,
(3) permitting the State's witness to testify about childhood sexual abuse dynamics
and disclosures although she did not comply with a subpoena duces tecum, (4)

admitting evidence of his alleged prior bad acts against Victim's mother, and (5) admitting testimony in violation of the best evidence rule. We affirm.

**FACTS**

The events leading to Galloway's charges occurred between January 1, 1988, and July 31, 1990, and all charges concerned the same victim (Victim). In 2016, Victim revealed a delayed disclosure of prior abuse. Investigator Robert Perry, who worked with GCSO's Crimes Against Children Unit, interviewed Victim, Victim's mother, and other family members. After Perry conducted two interviews and a telephone call with Galloway, Galloway was arrested. A jury trial was held in May 2018. Victim, who was thirty-nine years old and had travelled from Missouri for the trial, testified she initially knew Galloway because he had been married to her aunt.

During an in-camera hearing, Victim testified the first time Galloway abused her was at the University Inn in Greenville County, where he was babysitting her and her brother. Victim alleged Galloway reached into her pants and touched her vagina. According to Victim, Galloway claimed he mistook her for her mother in his sleep. Victim testified that under the pretext of supervising her, Galloway insisted on helping Victim shower and would wash her buttocks, vagina, and breasts, telling her if he did not play with her breasts they would not grow. Victim also discussed one occasion when Galloway took her into her mother's bedroom, laid her on the bed, removed her pants, and performed oral sex. Before the jury, Victim testified her mother, Patricia Waldrop, worked at a gas station convenience store. Victim testified Galloway began frequenting the store, and she similarly testified regarding the babysitting incident at the University Inn. The day after the first abuse, Victim told Waldrop what happened. Although Galloway did not babysit her and her brother for a long time, she, Waldrop, and Victim's brother later moved in with Galloway. Victim also described abuse that occurred in North Carolina, stating when she was stacking wood into a truck, Galloway came up behind her, reached into her underwear, and fondled her.

Victim testified Galloway's relationship with Waldrop "started out okay" but "just got bad fast." When Victim began to testify about physical fights between Waldrop and Galloway, Galloway objected under Rule 404(b), SCRE. The State replied it did not seek admission of the disputed evidence under Rule 404(b); rather, it contended it was "relevant evidence." The trial court overruled Galloway's objection without specifying a reason for its ruling. Victim testified Galloway would be violent when he was angry and had physical altercations with

Waldrop. She recalled an incident when she tried to call 911 after a "really bad" altercation and Galloway, upon learning what she was doing, threatened to kill Waldrop.

Victim eventually again disclosed Galloway's abuse to Waldrop and, shortly thereafter, she saw Galloway at the home of Waldrop's mother and Galloway told Victim if she did not forgive him he would go to hell. According to Victim, she responded, "I guess you're just going to go [to] hell." Although they never moved back in with Galloway, Galloway continued to behave violently toward Victim and her family, and Victim testified that on different occasions, Galloway kidnapped her brother, drove "doughnuts" in their yard, attempted to run Victim and Waldrop off the road, and along with two other persons, pulled Victim's biological father from his car, busted his face, and broke his ribs. According to Victim, she suffered from post-traumatic stress disorder (PTSD) and schizoaffective disorder. She attributed the PTSD as arising from the abuse.

Waldrop, who testified after Victim, corroborated much of Victim's testimony. Waldrop also testified without objection that Galloway himself had corroborated much of Victim's account of the first time Galloway abused her, claiming he woke up next to Victim and put his arm around her, thinking it was Waldrop. During her testimony, Waldrop referenced a letter that Galloway had written to her in which he expressed a desire for a reconciliation. When asked by the State to elaborate about what Galloway said in the letter, Waldrop said, "[h]e just talked to me about he was sorry that he's been abusive." Galloway immediately objected on the grounds of hearsay and the best evidence rule. As to the best evidence rule, Galloway asserted, "If they're going to talk about the contents of the letter, they need the letter to prove it." The trial court asked if the letter was available, and the State replied there was no letter. The court allowed Waldrop to continue discussing it, reasoning her testimony was "based on state of mind." Waldrop testified that in the letter Galloway "apologized for being mean to us and he said he wouldn't do it anymore and he really wanted us to come back."

The State called Shauna Galloway-Williams, a licensed professional counselor and the executive director of a child abuse and sexual assault recovery center. During an in-camera hearing, Galloway-Williams testified about her qualifications, current employment, and risk factors of childhood abuse.[1] The State sought to have her

[1] The factors identified by Galloway-Williams were age, disabilities, emotional problems, behavioral problems, substance abuse, poverty, violence, and single-parent homes, particularly those with live-in caregivers.

qualified as an expert in childhood sexual abuse dynamics and disclosure pursuant to Rule 702, SCRE. Galloway objected, arguing the subject matter was not beyond the ordinary knowledge of the jury, Galloway-Williams was not qualified as an expert to testify regarding the issues for which her testimony was being offered, and her testimony was not reliable. Galloway requested the trial court "exercise its gatekeeping role under [Rule] 702[, SCRE]." Galloway further complained that the week before trial he had sent Galloway-Williams a subpoena duces tecum directing her "to bring with her to court . . . all the articles, publications, treatises, books, manuals, [and] data that she would be relying upon." However, she brought only one article about forensic interviewing. The trial court qualified her as an expert.

Before the jury, Galloway-Williams testified that one risk factor for childhood sexual abuse was a single-parent household with a live-in caregiver. Galloway-Williams also identified common reasons that a child victim would delay reporting abuse. One such factor was the child's awareness that disclosure could result in consequences to the child and the child's family. According to Galloway-Williams, "these consequences may be based on unrealized fears or they may be based on threats that were made." As to the subpoena, Galloway-Williams explained it would have been impossible to bring all of the publications she based her opinions on, and the article on forensic interviewing that she provided to the defense before trial gave a good overview and a lengthy bibliography of the topics related to child abuse. Although Galloway-Williams conceded the article was "called forensic interviewing," she noted it included a subsection on delayed reporting.

Galloway did not testify on his own behalf; however, he proffered Dr. David Price, a forensic psychologist and forensic neuropsychologist, as an expert witness in general psychology, specifically in PTSD and schizoaffective disorder. During an in-camera hearing in which Dr. Price discussed his qualifications and proposed testimony, he testified on direct examination that it was possible for someone to have a false memory of abuse but the reasons for such an occurrence varied among individuals. On cross-examination, Dr. Price conceded that although it was possible that someone who was "schizoaffective now . . . could possibly . . . misrepresent something in their mind," such a misrepresentation could also occur in the absence of a schizoaffective disorder. Dr. Price also clarified he was testifying as a blind expert, had not evaluated Victim and was not testifying about anything in detail about her, and was therefore not able to state there was anything in her past that would have made her more likely to have false memories. Price explained he could not give an expert opinion about Victim without either

evaluating her or reviewing her medical records and other relevant documents. The trial court allowed Dr. Price to testify as an expert but prohibited him from testifying about false memory and repressed memory because he had not evaluated Victim. Dr. Price's jury testimony included a statement that possible symptoms of schizoaffective disorder include delusions or hallucinations and that someone suffering from PTSD may have distorted memories.

The jury convicted Galloway of one charge of criminal sexual conduct on a minor in the first degree (CSC)[2] and of lewd act on a minor. The trial court sentenced Galloway to consecutive sentences of thirty years' imprisonment for first-degree CSC and ten years for lewd act on a minor. The court denied Galloway's motion for reconsideration of his sentence. This appeal followed.

**STANDARD OF REVIEW**

"In criminal cases, we review the decisions of the trial court only for errors of law." *State v. Gilmore*, 396 S.C. 72, 77, 719 S.E.2d 688, 690 (Ct. App. 2011). "Therefore, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous." *State v. Banda*, 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006). Thus, "this [c]ourt is limited to determining whether the trial court abused its discretion." *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009). An appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *Id.*

**LAW/ANALYSIS**

## I.   LIMITATION ON DR. PRICE'S TESTIMONY

Galloway argues the trial court erred in prohibiting Dr. Price from testifying that schizoaffective disorder could cause false memories because, despite finding the subject matter of the testimony was beyond the ordinary knowledge of the jury and Dr. Price had acquired the knowledge to be qualified as an expert, the court failed to give due consideration to the reliability of the testimony regarding false memory. Thus, Galloway contends the trial court abandoned its gatekeeping duty to consider all three preliminary prerequisites of Rule 702, SCRE. We find no reversible error.

---

[2] The jury acquitted Galloway of one CSC charge and was unable to reach a unanimous verdict on the remaining CSC charge.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. "All expert testimony must satisfy the Rule 702 criteria, and that includes the trial court's gatekeeping function in ensuring the proposed expert testimony meets a reliability threshold for the jury's ultimate consideration." *State v. White*, 382 S.C. 265, 270, 676 S.E.2d 684, 686 (2009). Before admitting expert testimony, the trial court must determine the following: "(1) whether the evidence will assist the trier of fact; (2) whether the expert has acquired the requisite knowledge and skill to qualify as an expert in that particular subject matter[;] and (3) whether the substance of the testimony is reliable." *State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 270 (2018). "The appellate court reviews a trial [court's] ruling on admissibility of evidence pursuant to an abuse of discretion standard and gives great deference to the trial court." *State v. Torres*, 390 S.C. 618, 625, 703 S.E.2d 226, 230 (2010).

Galloway concedes the trial court performed the first two requirements of its gatekeeping function by finding the subject matter of the testimony was beyond the ordinary knowledge of the jury and by finding Dr. Price had acquired the knowledge to be qualified as an expert. Galloway argues the trial court erred in failing to give due consideration as to the third requirement, whether the substance of the testimony is reliable. We find the trial court considered the evidence for reliability. Although Dr. Price indicated schizoaffective disorder could result in false memories, he also acknowledged false memories could occur in the absence of the disorder, which casted doubt on a causal link. Furthermore, Dr. Price stated he would need to evaluate Victim, or at least review her records, to opine on whether Victim's memories of the alleged abuse were false. In addition, because of the absence of any evidence that Victim fabricated or otherwise imagined her recollections of her past abuse, its probative value would have been substantially outweighed by the possibility that it would confuse the issues or mislead the jury. Under these circumstances, we find the restriction on Dr. Price's testimony was within the trial court's discretion. *Id.* (stating an appellate court reviews decisions regarding the admissibility of evidence under an abuse of discretion standard); Rule 403, SCRE (allowing relevant evidence to be excluded if its probative value would be substantially outweighed by other factors, including confusion of the issues or misleading of the jury).

## II.    RISK FACTORS OF CHILDHOOD SEXUAL ABUSE

Galloway argues the trial court abused its discretion in allowing Galloway-Williams to testify as an expert about the risk factors of childhood sexual abuse because the subject matter of the testimony was not beyond the ordinary knowledge of the jury.  We disagree.

In *State v. Weaverling*, 337 S.C. 460, 474, 523 S.E.2d 787, 794 (Ct. App. 1999), this court found expert testimony regarding "common behavioral characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts" was admissible.  Our court found "[s]uch testimony is relevant and helpful in explaining to the jury the typical behavior patterns of adolescent victims of sexual assault." *Id.* at 475, 523 S.E.2d at 794.  In *Jones*, 423 S.C. at 636, 817 S.E.2d at 271, our supreme court likewise found "the law in South Carolina is settled: behavioral characteristics of sex abuse victims is an area of specialized knowledge where expert testimony may be utilized."  In addition, the court found expert testimony on "the behavior of nonoffending caregivers" was "contrary to what a reasonable person would expect." *Id.* at 637, 817 S.E.2d at 271.  Thus, it affirmed the trial court's finding that the testimony "fell outside the scope of lay knowledge and was therefore admissible." *Id.*  Most recently, in *State v. Acker*, Op. No. 5892 (S.C. Ct. App. filed Jan. 19, 2022) (Howard Adv. Sh. No. 3 at 48, 54-55), this court found an expert's testimony concerning risk factors such as substance abuse in the home, a child's age, a child's special needs or disabilities, and behavioral problems were beyond the ordinary knowledge of the jury.  We likewise find the risk factors associated with childhood abuse admitted in this case were not likely to be within the common knowledge of jurors.  Thus, we find the trial court did not abuse its discretion in admitting the evidence.

## III.   FAILURE TO COMPLY WITH SUBPOENA DUCES TECUM

Galloway argues the trial court erred in qualifying Galloway-Williams as an expert and allowing her to testify despite her failure to comply with his subpoena duces tecum requesting articles and publications on which her opinions were based.  We disagree.

In *Jones*, the court considered whether it was error to admit expert testimony where Jones alleged "there was no evidence demonstrating [the] opinions were accurate or reliable . . . [and the expert] failed to identify or name any studies supporting her opinions, nor did she state whether any of the literature she relied on had been peer reviewed."  423 S.C. at 638, 817 S.E.2d at 271–72.  Our supreme court found no error where the "testimony focused on explaining the concept of delayed disclosure and the role of nonoffending caregivers in the dynamics of

sexual abuse." *Id.* at 639, 817 S.E.2d at 272. Although the expert in *Jones* "did not identify by name the articles serving as the basis for her opinions, she indicated she could provide citations if given an opportunity to gather them." *Id.* In addition, "she explained her opinions were supported by peer-reviewed professional journals and trade publications, all of which were uniformly accepted and recognized by child sexual abuse experts and professionals." *Id.*

At trial, Galloway-Williams testified at length regarding her qualifications as a licensed professional counselor, provided a source with an overview of the topics she was expected to testify about, and explained it contained an extensive bibliography of the topics related to child abuse. We find the trial court acted within its discretion in qualifying her as an expert witness regardless of whether she fully complied with the subpoena duces tecum. *See State v. Morris*, 376 S.C. 189, 203, 656 S.E.2d 359, 367 (2008) ("The qualification of a witness as an expert is a matter largely within the trial court's discretion and will not be reversed absent an abuse of that discretion.").

## IV.   EVIDENCE OF PRIOR VIOLENCE

Galloway argues the trial court erred in admitting testimony about his violent behavior toward Waldrop, claiming the evidence was prior bad act evidence that did not fall within any of the exceptions enumerated in Rule 404(b), SCRE or *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923), and the trial court failed to conduct the mandatory balancing analysis. We find no reversible error.

When Victim initially testified about Galloway's violent acts toward Waldrop, Galloway objected under Rule 404(b), SCRE. The State replied it did not seek admission of the disputed evidence under Rule 404(b); rather, it contended it was "relevant evidence." The trial court overruled Galloway's objection and allowed Victim to testify. Galloway acknowledges he did not object to the admission of other evidence of bad acts later admitted, but he argues the other evidence admitted did not prejudice him because it supported his theory that Victim was making "outlandish" accusations and fabricating events.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Rule 404(b), SCRE. "To be admissible, the bad act must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence

of the prior bad act must be clear and convincing." *State v. Fletcher*, 379 S.C. 17, 23, 664 S.E.2d 480, 483 (2008).

"As a threshold matter, the trial [court] must initially determine whether the proffered evidence is relevant . . . ." *State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009). Once the court finds the evidence is relevant, it must then determine if it fits within one of the enumerated exceptions to Rule 404(b). *Id.* at 154–55, 682 S.E.2d at 895. If the court finds the prior bad act evidence is clear and convincing and falls within an exception, it must then determine if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.* at 155–56, 682 S.E.2d at 896. This requires the trial court to conduct a balancing test, "which must be based on the entire record." *State v. Scott*, 405 S.C. 489, 506, 748 S.E.2d 236, 245 (Ct. App. 2013) (quoting *Clasby*, 385 S.C. at 156, 682 S.E.2d at 896). A trial court's failure to conduct the balancing test is error. *State v. Spears*, 403 S.C. 247, 254, 742 S.E.2d 878, 881 (Ct. App. 2013). However, this error is subject to a harmless error analysis. *See State v. King*, 424 S.C. 188, 201, 818 S.E.2d 204, 211 (2018) (applying harmless error analysis where trial court erred in failing to conduct a Rule 404(b) analysis before admitting prior bad acts evidence).

In this case, although we agree with the trial court admission of the evidence because we find it was relevant to Victim's delayed disclosure, we find the trial court erroneously failed to conduct a balancing test. However, we find the court's error was harmless because many other instances of Galloway's violence were admitted without objection. Victim testified without objection that Galloway broke into a hotel room and kidnapped her younger brother. Victim and Waldrop both testified Galloway drove his truck into the yard "doing doughnuts." Victim testified Galloway attempted to run her mother's car off the road and once chased them in the car. Victim also recounted an incident in which Galloway pulled her father from a vehicle, busted his face, and broke his ribs. Waldrop testified Galloway shot at their duplex, harassed her at work, and beat up her boss. Because so many other instances of Galloway's violence were admitted without objection, we find any error in failing to conduct a Rule 404(b) analysis when admitting Victim's initial testimony about Galloway's violence was harmless. *See State v. Kirton*, 381 S.C. 7, 37–38, 671 S.E.2d 107, 122–23 (Ct. App. 2008) (stating the admission of inadmissible evidence is harmless where it is merely cumulative to other evidence that is admitted without objection).

## V.     GALLOWAY'S LETTER

Galloway argues the trial court erred in permitting Waldrop to testify about a letter Galloway allegedly wrote to her without producing the letter. We find no reversible error.

During testimony questioning Waldrop's thoughts and consideration of returning to Galloway, she testified Galloway wrote her a letter in which "he apologized for being mean to us and he wouldn't do it anymore and he really wanted us to come back." The State responded, "there is no letter, so there's no way to have better evidence . . . ."

"The question of whether to admit evidence under [Rules 1001 to 1004, collectively known as the best evidence rule,] is . . . addressed to the discretion of the trial court." *State v. Mitchell*, 399 S.C. 410, 421, 731 S.E.2d 889, 895–96 (Ct. App. 2012) (alteration in original) (quoting *State v. Halcomb*, 382 S.C. 432, 443–44, 676 S.E.2d 149, 154–55 (Ct. App. 2009)). "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." Rule 1002, SCRE. However, under Rule 1004, SCRE,

> The original is not required, and other evidence of the
> contents of a writing, recording, or photograph is
> admissible if--
> (1) Originals Lost or Destroyed. . . ; or
> (2) Original Not Obtainable. . . ; or
> (3) Original in Possession of Opponent. . . ; or
> (4) Collateral Matters. The writing, recording, or
> photograph is not closely related to a controlling issue.

The letter referred to abusive behavior against Victim's mother, not sexual abuse of Victim, which was the controlling issue. Thus, the original letter is not required because it referenced a collateral matter under Rule 1004(4), SCRE. Furthermore, even if the admission of the letter was error, we find it was harmless error. *See Matter of Bilton*, 432 S.C. 157, 167, 851 S.E.2d 442, 447 (Ct. App. 2020) (explaining if improper evidence is admitted, "the next step is to determine whether the erroneous admission qualifies as a harmless error"); *id.* (explaining the analysis to determine if the erroneous admission of evidence was harmless requires the court to decide if the error contributed to the guilty verdict). In this case, any error in admitting the letter was harmless as cumulative based on the many other instances of violence admitted without objection. *See Kirton*, 381 S.C. at 37–38,

671 S.E.2d at 122 (stating the admission of inadmissible evidence is harmless where it is merely cumulative to other evidence that is admitted without objection).

**CONCLUSION**

Based on the foregoing, Galloway's convictions are

**AFFIRMED.**

**GEATHERS, J., and HUFF, A.J., concur.**