16569

STATE v. COX

(68 S. E. (2d) 624)

*Messrs. Simpson Hyatt* and *George F. Abernathy,* of Spartanburg, *for Appellant,* cite:

*Mr. Sam R. Watt, Solicitor,* of Spartanburg, *for Respondent.*

December 4, 1951.

OXNER, Justice.

We are in full accord with the opinion of the Chief Justice except that portion relating to the fourth question. It is our view that this question should also be decided adversely to appellant and the judgment of the Court below affirmed.

The record does not disclose the remarks of appellant's counsel to which the Solicitor objected. It may be fairly inferred, however, that he was seeking to give an explanation

of the failure of the defense to offer any evidence. If so, it was appellant's counsel who first called the jury's attention to the fact that no testimony had been offered by the defense. Under these circumstances, it is difficult to perceive any prejudice to the rights of appellant. Moreover, we think it would be a strained and unwarranted construction to hold that the statement of the Solicitor constituted an indirect or implied comment on the failure of appellant to testify. Evidently it was not so construed either by the court or counsel, for there was no exception to the remarks of the Solicitor, nor was the question now raised included in the grounds of the motion for a new trial.

It was held in *State v. Pendarvis,* 88 S. C. 548, 71 S. E. 45, that remarks by a Solicitor of a much more serious nature than those here involved were not prejudicial. While in a case involving the death penalty, the Court should be on the alert to see that every right of the accused is preserved, we think it would be going too far to say that the incident complained of might have influenced the verdict of this jury.

It is true that the jury was not instructed that no adverse inference could be drawn against appellant by reason of his failure to testify, but in the absence of a request to that effect, there was no error in failing to give such an instruction. *State v. King,* 158 S. C. 251, 155 S. E. 409. It is also exceedingly doubtful whether such an instruction would have been of any aid to appellant.

A majority of the Court having concurred in the views herein expressed, it is the judgment of this Court that the sentence and judgment of the Court below be affirmed.

FISHBURNE and STUKES, JJ., concur.

BAKER, C. J., and TAYLOR, J., dissent.

BAKER, Chief Justice (dissenting).

At the January, 1951, term of the Court of General Sessions for Spartanburg County, the appellant, Frank J. Cox,

was tried and convicted without recommendation to mercy, upon an indictment charging him with the murder of his wife, Neola Cox. The jury returned the verdict of guilty of murder after deliberating twenty-four minutes.

A motion for a new trial was made upon grounds substantially as those raised by appellant's first three exceptions on this appeal, and an additional ground which has not been made an exception. The motion was refused; and the sentence provided for by law was imposed upon him.

Appellant states the questions raised and involved in his appeal as follows:

"1. Did the presiding judge err in failing to grant a new trial on the ground that the jury stayed out only twenty-four minutes, indicating a flippant disregard of their duties?

"2. Did the presiding judge err in admitting as part of the *res gestae* the testimony of Fred Phillips, a witness for the state, concerning a statement made by the Defendant on August 30, 1950, the crime having been committed on October 10, 1950?

"3. Did. the presiding judge err in allowing the introduction as an exhibit, the chair in which Neola Cox was shot when photographs of the said chair had already been admitted showing everything the chair could show and the only purpose such introduction could have had was to inflame the jury?

"4. Is the defendant entitled to a new trial by virtue of the Solicitor's indirect, improper, and prejudicial comment on the fact that the defendant did not take the stand when the Solicitor made the statement 'the State could not comment on why there was no testimony offered by the defense'?"

We will discuss these issues *seriatim*.

The record shows beyond any reasonable doubt, when the testimony of the arresting officer is considered and which will be hereinafter referred to, that the appellant is guilty as charged in the indictment. He bor-

rowed a shotgun, proceeded to the home of his mother-in-law, where his estranged wife and their child were temporarily living, and shot his wife through a window while she was sitting inside said home with the child in her lap, from which wound his wife shortly thereafter died. There is nothing in the record which would have required any prolonged deliberation on the part of the jury, and as stated by the trial Judge, the fact that the jury stayed out such a short length of time indicated that there was unanimity of thought on the facts of the case.

The record further shows that on August 29, 1950, the appellant here pleaded guilty to having a difficulty with his wife, Neola Cox, and was sentenced to the public works of Spartanburg County for sixty days, and commenced the service of this sentence on August 30, 1950. The Mr. Phillips referred to in the second exception, was a rural policeman and among his duties was the keeping of the books at the county jail, and the receiving and discharging of prisoners. Phillips was permitted to testify, over the objection of appellant's counsel, that as the appellant was being taken from the jail to serve his sentence on August 30, 1950, he (the appellant) made the statement that someone would pay for this. Neola Cox, the wife of the appellant, was the prosecutrix in the case for which he was sentenced to the public works for sixty days, and the appellant was released from the chain gang on the morning of October 10th and shot and killed his said wife that night.

It is true that counsel objected to this testimony on the ground that it was too remote and not a part of the *res gestae*. However, it was not admitted as a part of the *res gestae*, but as a link in the chain of evidence to show express malice. Under the circumstances here, this evidence was admissible.

There is no merit in appellant's third exception. There was nothing gruesome or anything about the chair which could have inflamed the minds of the

jury. The marks from the shots showing thereon were corroborative of the testimony as to the position in which the deceased was sitting in the chair and the direction she was facing at the time she was shot. The case of *State v. Jones,* 201 S. C. 403, 23 S. E. (2d) 387, cited by the appellant, and other cases decided by this Court relevant to this issue are easily distinguishable.

We will now discuss appellant's fourth question. At the conclusion of the testimony offered by the State, counsel representing the appellant asked for and was granted an indulgence of a few minutes (presumably to confer on whether to offer any testimony), and the jury retired to their room where they remained for approximately twenty minutes before being brought back out. When the jury was returned to the Jury Box, Mr. Hyatt of counsel for the appellant, addressed the Court ·as follows: "If your Honor please, counsel for the defendant have decided to offer no testimony and have the privilege of opening and closing." When Mr. Hyatt was making the closing argument for the appellant (he having been preceded by Mr. Abernathy of counsel for the appellant, and Solicitor Watt representing the State), the following took place:

"Mr. Watt: Your Honor, I don't think counsel has any right to explain why he didn't offer any testimony because the State certainly can't comment on it.

"The Court: No, sir. Well, go ahead, Mr. Hyatt."

Thereupon, and without making any issue of the foregoing statement by the Solicitor, Mr. Hyatt continued with his argument to the jury. Apparently, counsel for the defendant-appellant did not then nor later attach any importance to the statement of the Solicitor, because they did not make a motion for a mistrial, did not request the trial Judge to charge the jury that they could not consider the fact that the defendant-appellant did not testify in his own behalf, and did not make any issue of it in their motion for a new trial. The issue is raised for the first time in this appeal.

However, in a case of such serious nature as this where the punishment is death by electrocution, although the statement by the Solicitor, in the light of the testimony in this case, in all probability had no effect on the verdict of the jury, yet we feel impelled to grant the appellant a new trial. In the last case before this Court, *State v. Wilkins,* 217 S. C. 105, 59 S. E. (2d) 853, 855, where this issue was discussed, and the same Solicitor involved, it is stated: "Of course if the Solicitor had, in his argument, directly referred to the fact that the appellant did not go upon the witness stand, it would have been the duty of the trial Judge to declare a mistrial when such was brought to his attention."

While the statement of the Solicitor was not made in his argument to the jury, it was made in their presence and in a most effective manner by interrupting the closing argument of counsel for the appellant, but addressing his remarks to the Court. We feel sure that this was inadvertent and not intentional on the part of the Solicitor, but this fact cannot cure the harm, if any, that the appellant suffered.

The first case decided by this court in which the issue being discussed was before the Court was that of *State v. Howard,* 35 S. C. 197, 202, 203, 14 S. E. 481, 482, from which we quote:

" ' "Gentlemen of the Jury: The counsel for William L. Howard have argued that he did not make the confession. Now, gentlemen, if he did not make the confession, why did he not go upon the stand and deny it? He is present in court, and could have done so." ' This is the first instance where this court has been called upon to decide this delicate question. As we understand the present inquiry, it will require us to compare the constitutional right, so to speak, of a defendant in a criminal prosecution, with that provision in the General Statutes of this state touching his right to testify. Article 1, § 13, of the state constitution, provides: '*   *   *   No person shall be compelled to accuse or furnish evidence against himself.   *   *   *'   Section 2643 of the General Statutes of this state reads: 'In the trial of all

criminal cases the defendant shall be allowed to testify (if he desires to do so, and not otherwise) as to the facts and circumstances of the case.' To our minds, these two provisions—one of our constitution and the other of our statute law—look to an absolute freedom of defendants, in all criminal cases, as to testifying. The former indicates that such a one shall not be forced to testify, while the latter is purely permissive, provided he chooses to do so. This being the case, it almost of necessity follows that nothing shall result to his prejudice from a failure to testify. We cannot regard the utterances of the solicitor in his argument otherwise than as trenching upon these provisions of the law that the prisoner lawfully invokes for his protection. Such being our view of the law, we lay it down as a rule that, however innocently done by a solicitor, or however praiseworthy his motives in so doing, it is an unwarrantable line of argument. In this connection, however, we may add that the circuit judge checked any ill resulting to the defendant therefrom by promptly charging the jury that it was the right of the defendant to testify or not, as he might choose, and that no inferences to his prejudice should result therefrom. We therefore, in this instance, overrule this ground of appeal."

In the present case, the appellant was arrested by an officer of the law a very short distance from the residence in which the deceased was shot, while running away from the residence, and immediately after a shot had been fired apparently at or near this residence where the deceased was killed, and where and while someone there was hollering for help. The arresting officer testified that the appellant then and there told him, among other things, "I shot that woman. Don't take me back up there." At the time the appellant was arrested he had a shotgun in his possession, from which one shell had been fired.

It will therefore be observed that this statement on the part of the appellant was in effect a confession, just as in the *Howard case* from which we have quoted above, and

the Solicitor could not therefore directly or indirectly comment on the fact that the appellant had not gone on the witness stand to deny the testimony of this law officer. The trial Judge did not charge the jury that it was the right of the defendant-appellant to testify or not as he might choose, and that no inferences to his prejudice should result therefrom. No criticism of the trial Judge is intended for not having instructed the jury that no prejudicial inference was to be drawn from the failure of the defendant-appellant to testify in his own behalf, the statement of the Solicitor having been made at the time it was made, and the trial Judge's attention not having been thereafter directed thereto.

Except for the punishment to be inflicted upon the appellant (death by electrocution) in the light of the testimony of this case, and without the aid of the alleged admission by the appellant to the arresting officer that he had shot a woman, we would hold that there being other testimony which warranted the conviction of the appellant, the statement of the Solicitor complained of here was harmless. But we prefer to lean over backwards to make certain that the defendant-appellant receives the fair and impartial trial guaranteed to him by the Constitution and free from any possible taint of prejudice which may have been caused by the improper remark of the Solicitor. We cannot say that the statement of the Solicitor did not tend to impress upon the minds of the jury the failure of the appellant to deny the alleged "confession" to the arresting officer, and that he was therefore prejudiced.

If under the testimony in this case we are going to the extreme in granting the appellant a new trial, we will at least have the consoling thought that we have fully protected his rights.

Counsel who represented the defendant here and upon his trial below were appointed by the trial Judge to do so, and have faithfully served without any pecuniary reward. We desire to express our appreciation to them.

For the reason herein stated, the judgment of the Circuit Court should be reversed, and the case remanded for a new trial.

TAYLOR, J., concurs.