496 S.E.2d 424

**The STATE, Respondent,**

v.

**Ray GILCHRIST, Appellant.**

**No. 2784.**

Court of Appeals of South Carolina.

Heard Nov. 4, 1997.

Decided Jan. 19, 1998.

622

Assistant Appellate Defender Robert M. Dudek, of Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Office of the Attorney General, Columbia; and Solicitor W. Townes Jones, IV, Greenwood, for respondent.

HOWARD, Judge:

Ray Gilchrist was convicted by a jury of attempted armed robbery. He was sentenced to twelve years imprisonment. Gilchrist appeals, alleging error in the introduction of prior bad act evidence and a statement allegedly made by him to a third party. We affirm.

## I. FACTS

On November 29, 1995 at approximately 9:00 p.m., Sandra Ginn (victim) was accosted while sitting in her car in the parking lot of Crosscreek Mall in Greenwood. Johnny Ethridge walked up to her window and when she rolled it down slightly, he stuck his hand inside and demanded her billfold. He told the victim he had a gun and would shoot her if she would not give the billfold to him. When she told him she did not have it, he began to choke her and threatened to kill her. She blew her horn in response and he fled. A witness exiting the mall heard the horn and saw a person walk away, and get into a slow-moving, white Mustang. The witness then saw the Mustang speed out of the parking lot.

Shortly after midnight, Gilchrist was stopped while driving a white Mustang and asked to come to the Greenwood police department. Gilchrist admitted to police that he had picked someone up in the mall parking lot. He initially denied knowing the passenger's identity, but then said the passenger's nickname was Mandy or Brushawn. Gilchrist ultimately identified Ethridge from a photo line-up and told the police Ethridge's full name. Gilchrist consistently maintained his innocence, denying any part in the attempted robbery. He claimed he first knew of wrongdoing by his passenger when they left the mall parking lot and Ethridge told him what he had done.

Ethridge pleaded guilty to attempted common law robbery and testified on behalf of the state. According to Ethridge, he, Gilchrist, and Gilchrist's cousin, Ervin Hackett, had driven around in Gilchrist's white Mustang. Ethridge was in the backseat. Gilchrist let Hackett out of the car after taking him to his girlfriend's house. Ethridge stayed in Gilchrist's car, getting in the front seat. Ethridge testified Gilchrist then offered him a "hit" of crack cocaine, which he accepted. He had not seen Gilchrist smoke any crack that day and he did not know whether Gilchrist was high or not.

According to Ethridge, Gilchrist told him that if they "[made] a lick," they could get some more crack. Ethridge testified a "lick" is a term meaning to "rip somebody off." Gilchrist also said, "Man, we get some more money, we can

get some more of that," meaning crack. Although Ethridge did not respond, Gilchrist then drove to the mall.

Gilchrist parked the car in the mall lot and said to Ethridge, "Yo, man, there's one right there," pointing to the victim sitting in her car. Gilchrist then said "Damn man, if we had a gun." Gilchrist got out of the car, opened the trunk, and removed a metal lug wrench. Ethridge also got out of the car and went to the trunk. Gilchrist tried to hand him the wrench saying, "Yo, man, this will work real nice," but Ethridge refused to take it. Ethridge, who was still high from smoking crack cocaine, sat back down in the car for a few seconds, and then went over to the victim's car and attempted to rob her. After she blew the horn, he walked back towards Gilchrist's car, which was beginning to "creep up," and got inside. Gilchrist sped up as he left the mall and he dropped Ethridge near his girlfriend's house.

Gilchrist's testimony contradicted Ethridge's account of the incident. First, Gilchrist said Ethridge got out of the car with Hackett. Gilchrist denied giving him a ride to the mall. Gilchrist said he went to the mall to visit his nephew and ran into Ethridge in the parking lot approximately an hour after he had dropped him off with Hackett. Once he got to the mall, Gilchrist decided not to actually go into the mall, but agreed to give Ethridge a ride, telling him to meet Gilchrist at the car. Gilchrist denied providing Ethridge with crack, hearing the victim's horn blow, or knowing Ethridge had committed a crime before he picked him up.

## II. ISSUES

A. Did the trial judge err in admitting evidence that Gilchrist gave his accomplice crack cocaine to smoke before they attempted to rob the victim?

B. Did the trial judge err in admitting into evidence a statement made by Gilchrist earlier on the day of the attempted robbery that a particular liquor store "looked like a good place to rob"?

## III. SCOPE OF REVIEW

The admission of evidence is within the discretion of the trial court and absent an abuse of discretion will not be

reversed on appeal. *State v. Tucker*, 319 S.C. 425, 462 S.E.2d 263 (1995).

## IV.  DISCUSSION

### A.  Prior Bad Act Evidence

Gilchrist first contends the trial judge erred by admitting evidence he gave Ethridge crack to smoke before the attempted robbery.  We disagree.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."  Rule 404(b), SCRE; *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

■ The evidence Gilchrist gave crack to Ethridge shortly before the attempted robbery, combined with his contemporaneous statements, is logically relevant to establish Gilchrist's motive to rob the victim.  Evidence of prior drug use is competent to establish motive for a crime where the record supports a logical relevance between the drug use and crime for which the defendant is accused.  *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996).  The fact that Gilchrist did not smoke crack himself is not dispositive.  Ethridge not only testified that he received crack from Gilchrist but also that Gilchrist suggested they could *both* get more crack if they found someone to rob.

■ Gilchrist argues the State did not meet its burden of proving he actually gave Ethridge crack with clear and convincing evidence.  *See State v. Smith*, 300 S.C. 216, 387 S.E.2d 245 (1989) (to be admissible, evidence of prior bad conduct must be clear and convincing).  In *State v. Aiken*, 322 S.C. 177, 470 S.E.2d 404 (Ct.App.1996), this Court held a defendant's prior bad acts were established by clear and convincing evidence where a witness testified he had direct knowledge because he and the defendant committed the prior bad acts together.  Likewise in Gilchrist's case, Ethridge had direct knowledge of Gilchrist's distribution of crack because Gilchrist gave the crack to him.  We therefore conclude the trial judge

did not abuse his discretion in finding the evidence of Gilchrist's prior bad act was clear and convincing.

■ Gilchrist next argues evidence of his prior bad act should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Rule 403, SCRE; *Adams, supra.* We recognize the "great possibility that unfair prejudice may result from evidence of a criminal defendant's past use of cocaine." *Adams,* 322 S.C. at 119, 470 S.E.2d at 369. However, this does not mean the danger of unfair prejudice always outweighs the probative value of evidence of prior drug involvement by a criminal defendant.

■ Unfair prejudice means an undue tendency to suggest decision on an improper basis. *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991). "The determination of the prejudicial effect of prior bad act evidence must be based on the entire record and the result will generally turn on the facts of each case." *State v. Forney,* 321 S.C. 353, 358, 468 S.E.2d 641, 644 (1996). Upon review of the record, we conclude the trial judge did not abuse his discretion in finding the probative value of the defendant's prior bad act was not substantially outweighed by the danger of unfair prejudice.

## B. Liquor Store Statement

Gilchrist's cousin, Hackett, testified at trial. He stated, over objection, that during the trip to his girlfriend's house they passed Tharpe's Liquor Store. According to Hackett, Gilchrist pointed out the store, saying it "looked like a good place to rob." Gilchrist denied the statement. Gilchrist contends the trial judge erred by admitting the statement. We disagree.

Gilchrist first argues the statement was irrelevant to any issue in his trial and therefore should have been excluded. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. Irrelevant evidence is inadmissable. Rule 402, SCRE.

The trial judge ruled the liquor store statement was relevant to show Gilchrist's state of mind relating to the attempted robbery of the victim. Evidence which tends to prove a criminal defendant's state of mind or intent at or near the time of the crime alleged is relevant in establishing his guilt. *See State v. Jones*, 273 S.C. 723, 735, 259 S.E.2d 120, 126 (1979) ("The fact that [defendant] smoked marijuana in close proximity to the time the crimes were committed is clearly relevant to the condition and state of mind of [defendant] just as evidence of intoxication would be."); *State v. Cox*, 221 S.C. 1, 68 S.E.2d 624 (1951) (holding defendant's statement, "someone [will] pay for this," made to a third party after being sentenced to 60 days on chain gang for assault on wife was admissible as a link in chain of evidence to show express malice in subsequent prosecution for murdering wife).

At trial, Gilchrist could not realistically escape at least tangential entanglement in the circumstances since he was the driver of the white Mustang automobile. But, he steadfastly maintained he had no prior knowledge of the attempted robbery. Under these circumstances, a central issue involved his state of mind.

In *State v. Cox, supra*, our Supreme Court upheld the admission of a prior statement as directly relevant to the defendant's state of mind, to establish malice. In that case, the defendant was accused of murdering his wife. Two months before the murder, the defendant was sentenced to sixty days in jail after pleading guilty to "having a difficulty" with her. *Id.* at 5, 68 S.E.2d at 625. During the booking process, he made the statement "someone [will] pay for this" in the presence of the booking officer. *Id.* at 5, 68 S.E.2d at 626. The State introduced this prior statement through the booking officer at the murder trial. On appeal, the Supreme Court concluded the statement was admissible "as a link in the chain of evidence to show express malice." *Id.*

The statement admitted in this case has similar relevance. According to Hackett, Gilchrist dropped him off after making the liquor store statement in the car.[1] Taking the State's other evidence as true, Gilchrist then offered Ethridge crack

---

1. It is not clear from the record whether Ethridge heard this statement from the backseat.

and suggested they rob someone to get money to buy more, and drove to the mall and identified the victim as a person to rob. The liquor store statement tends to make the existence of Gilchrist's intent to rob more probable than it would be without this evidence. Therefore, Hackett's testimony regarding the liquor store statement is relevant.

■ Secondly, Gilchrist argues the statement was inadmissible under Rule 403, SCRE, because any probative value was substantially outweighed by the danger of unfair prejudice. We disagree.

The statement attributed to Gilchrist was conveyed to the jury by Gilchrist's cousin, Hackett, who was not implicated in the attempted robbery. Presumably, he did not have the same motive of self-preservation which might taint the testimony of Ethridge. The statement may be fairly viewed as having substantial probative value, since it is independent corroboration of an intent to rob harbored shortly before the attempted robbery.

Conversely, this statement has little danger of evoking improper prejudice in the minds of the jurors. Unlike a prior bad act, which always raises the risk of an improper inference based on character,[2] a statement is an actual communication of thought which may or may not give rise to an impermissible inference, depending upon what is said and the circumstances under which it is said.

■ In considering a Rule 403, SCRE, challenge, the trial court must consider the nature of the statement, as well as the context in which it was made. Thus, for example, a statement imputed to a defendant which contains graphic language distasteful to normal sensibilities, or epithets or slurs against others, may be excludable under Rule 403, SCRE, where it has little relevance. *See, e.g., United States v. Kallin,* 50 F.3d 689 (9th Cir.1995) (holding any probative value of defendant's prior statement, that he disliked Mexicans, was far outweighed by its prejudicial effect in tax evasion prosecution).

---

2. That is, because the defendant previously committed a bad act, he is more likely to have committed this one. *See* Rule 404(b), SCRE; *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

We do not view the statement alleged in this case to be so inherently prejudicial. The comment "[that store] look[s] like a good place to rob" would not normally be prejudicial, for example, if made in a security evaluation. On the other hand, it may be unduly prejudicial if introduced against someone who is accused of an unrelated or dissimilar crime, such as tax evasion, since its only purpose in such a context would be to convey the impression of a general criminal mind. *Id.*

The "prejudice" created by Gilchrist's comment in the context of this case is an inference that he intended to rob someone that day. This inference is material to the State's charge against him. The State attempted to prove Gilchrist intended to rob the victim and followed through with that intent by actually attempting to rob her with Ethridge. The prejudice Gilchrist seeks to escape is the prejudicial impact any criminal defendant faces when the State produces relevant evidence that implicates guilt of a crime charged.

■ "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir.1993); *United States v. Rodriguez–Estrada*, 877 F.2d 153, 156 (1st Cir.1989) ("[A]ll evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided.").

Upon review of the record, we find no undue tendency to suggest decision on an improper basis regarding the liquor store statement. *See Alexander, supra.* However, even if there is some danger of undue prejudice, it does not substantially outweigh the probative value of the evidence. Rule 403, SCRE. Therefore, the trial judge did not abuse his discretion by admitting the statement.

## V. CONCLUSION

For the foregoing reasons, Gilchrist's conviction is
**AFFIRMED.**

HOWELL, C.J., and CURETON, J., concur.