# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Thomas Stephen Acker, Appellant.

Appellate Case No. 2016-002368

---

Appeal From Spartanburg County
J. Derham Cole, Circuit Court Judge

---

Opinion No. 5892
Heard October 10, 2019 – Filed January 19, 2022

---

### AFFIRMED

---

Appellate Defenders Adam Sinclair Ruffin and Kathrine Haggard Hudgins, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General William M. Blitch, Jr., Assistant Attorney General Susan Ranee Saunders, and Assistant Attorney General Jonathan Scott Matthews, all of Columbia; and Solicitor Barry Joe Barnette, of Spartanburg; all for Respondent.

---

**MCDONALD, J.:** Thomas Stephen Acker appeals his convictions for first-degree criminal sexual conduct (CSC) with a minor and disseminating obscene material to a minor, arguing the circuit court abused its discretion in (1) admitting expert testimony addressing the behavioral characteristics of child sexual abuse victims and (2) admitting his statement regarding a pornography addiction. Acker further

contends the circuit court erroneously denied his motion for a directed verdict on the dissemination charge.  We affirm.

**Facts and Procedural History**

During the summer of 2014, Child's parents sent her to a counselor in response to her depression and because she was intentionally cutting herself.  During her counseling sessions, Child disclosed that Acker, her grandmother's (Grandmother) ex-husband, sexually abused her at Acker and Grandmother's home, which she visited often after school when she was five years old.[1]  Her parents filed a police report, and Child was referred to the Children's Advocacy Center, where she underwent a forensic interview.  During the interview, Child recounted that the sexual abuse at Grandmother's house began when she was in kindergarten and lasted until she was eight or nine years old.

Child testified at trial that while she was at Grandmother's house, Acker touched her inappropriately, made her touch his genitals, exposed himself, and masturbated in front of her.[2]  Acker told Child he would kill Grandmother if she told anyone about the abuse and that no one would believe her.  Additionally, Child testified Acker showed her pornography on his computer while holding her in a chokehold and telling her, "You need to grow up and be like that and people will love you if you're like that."  Such conduct happened on more than one occasion and occurred until she was seven years old.

Grandmother and Acker were married for five years; they divorced in July 2008.  The two remained in contact after their divorce, and Acker contacted Grandmother through emails and letters and by showing up at her job.  Grandmother noted Acker mentioned pornography in one of his letters and admitted he had been addicted to pornography for fifty-two years.

After the State presented its case, Acker moved for a directed verdict, which the circuit court denied.  Thereafter, Acker testified he and Grandmother lived at his house during their five-year marriage.  Acker worked from home in an office at the front of the house while Grandmother worked in an office in the back.  Acker denied abusing Child and testified he never showed her anything on his computer

---

[1] Grandmother and Acker were married at the time of the alleged abuse but divorced several years before Child's disclosure.

[2] Child was seventeen years old at the time of trial.

nor put her in a chokehold. He admitted he told Grandmother he "had had some problems, but it [was] not entirely pornography" and claimed he never showed anyone else pornography in his home.

On cross-examination, when asked if he had an addiction to pornography, Acker responded that he "had some contact with pornography from early ages" and acknowledged he told Grandmother he had been addicted to pornography for fifty-two years, including the years of the alleged abuse. However, Acker testified there was no truth to Child's allegations of abuse, claiming, "[t]hey are all fantasy tales that she dreamed up."

The jury convicted Acker of first-degree CSC with a minor and disseminating obscene material to a minor twelve years of age or younger. The circuit court sentenced him to twenty years' imprisonment on the CSC conviction and a concurrent five years on the dissemination charge, with credit given for time served.

## Standard of Review

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). Therefore, appellate courts are "bound by the trial court's factual findings unless they are clearly erroneous." *Id.* 345 S.C. at 6, 545 S.E.2d at 829. "The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Kromah*, 401 S.C. 340, 349, 737 S.E.2d 490, 494-95 (2013) (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847-48 (2006)). "An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions." *State v. Chavis*, 412 S.C. 101, 106, 771 S.E.2d 336, 338 (2015).

## Law and Analysis

## I. Expert Testimony

Acker argues the circuit court erred in admitting Shauna Galloway-Williams's testimony on risk factors, grooming, and the behaviors displayed by child sexual abuse victims because her testimony did not provide information outside the ordinary knowledge of the jury and did not assist the jury in understanding the evidence or determining a fact in question. Acker asserts that although Galloway-

Williams testified there was a unique set of characteristics associated with victims of child sexual abuse, she failed to identify these specific characteristics. We disagree.

During an in camera hearing, Galloway-Williams testified she is the executive director of the Julie Valentine Center, where she provides clinical supervision and interviewed child victims.[3] She is a licensed professional counselor who has provided counseling for children and adults for fifteen years, and has over 150 hours of skills-based training, specifically in the area of interviewing and assessing children regarding allegations of child maltreatment. Although she is a clinician and had not published articles at the time of her testimony, she was familiar with publications in the field as she attended trainings based on peer-reviewed articles and continues to read peer-reviewed material in her continuing education. At the time of this trial, Galloway-Williams had testified as an expert thirty-six times.

Galloway-Williams explained the field of child sex abuse dynamics includes issues common to child sexual abuse cases, such as delayed disclosure, grooming, false allegations, false denials, risk factors, and the behaviors children can demonstrate when they have been sexually abused. There are unique characteristics associated with how children disclose abuse, how they react to abuse, and how offenders abuse children, and these can be counterintuitive to what people believe normal reactions should be. Galloway-Williams testified that children delay disclosing abuse for several reasons, including: they are usually abused by someone they know, trust, and love; they fear what could happen to them and others if they report their abuse; they feel responsible, guilty, or ashamed about the abuse; they may be unable to articulate the abuse depending on their age; and they may have been threatened by their abuser. A majority of the cases Galloway-Williams had been associated with involved delayed disclosure, and there are common factors attributable to this phenomenon.

Regarding the reliability of her testimony, Galloway-Williams stated she would testify based on her experience, education, and training. Research in the field has been based on case studies involving known abuse in an ongoing effort to consider behavioral similarities among abused children. As to the question of scientific reliability, Galloway-Williams noted clinicians in her field cannot seek to replicate results because one cannot expose children to abuse conditions for testing purposes. Her field is a "soft science" based on "longitudinal studies, case studies,

---

[3] The Julie Valentine Center is a child abuse and sexual assault recovery center, which provides education, intervention, and treatment.

actual cases and reviewing those and looking at the similarities or differences in those and based on that type of research." A study in this area might "look at a certain number of cases of children where there's known sexual abuse …, and they may look at all of those cases and determine if there is a specific condition that's similar among those cases, for instance." When asked if she was aware of any research or cases that had found a delayed disclosure unreliable, she acknowledged there had been times when a child made a delayed disclosure and then, following an interview or investigation, it was determined abuse did not occur. Upon further cross-examination, Galloway-Williams admitted that the Julie Valentine Center does not track those instances involving delayed disclosures later determined to be false.

At the end of her in camera testimony, the State declared it intended to offer Galloway-Williams as an expert in child maltreatment and child abuse dynamics, including grooming, risk factors, false disclosures and allegations, denials and delayed disclosures, and behaviors children can exhibit after abuse. Acker objected, arguing Galloway-Williams's testimony that children delay disclosure because they were abused by someone they loved or trusted or because they feared their abuser, as well as her testimony addressing the impact abuse can have on a child's life, were all topics within the ordinary knowledge of the jury. Acker further argued the testimony was unreliable as it was based on the witness's own personal experiences, rather than the literature or science. Additionally, Acker asserted the State's sole purpose in presenting the testimony was to bolster the victim's credibility, and the prejudicial effect of this testimony substantially outweighed its probative value.

The circuit court disagreed, finding Galloway-Williams's testimony was outside the ordinary knowledge of the jury. Regarding reliability, the circuit court found the testimony was based on both the witness's personal experiences and the literature, noting the impossibility of testing for behavioral characteristics. Citing *Brown*[4] and *Jones*,[5] the circuit court concluded Galloway-Williams's testimony was reliable based "upon the requisite education, training and experience" and did not constitute improper bolstering because she was testifying as a blind expert only as to matters within her area of expertise, which might or might not be applicable to

---

[4] *State v. Brown*, 411 S.C. 332, 768 S.E.2d 246 (Ct. App. 2015), *abrogated on other grounds by State v. Jones*, 423 S.C. 631, 817 S.E.2d 268 (2018).

[5] *State v. Jones*, 417 S.C. 319, 790 S.E.2d 17 (Ct. App. 2016), *aff'd as modified*, 423 S.C. at 631, 817 S.E.2d at 268.

the characteristics of this child's case. The circuit court explained:

> [T]he witness doesn't know anything about this case because she's not talked to anybody about it; she's not interviewed any witness; she's not interviewed the child; she's not interviewed the parents; she's not interviewed the police officers; she's not interviewed the counselors; she's not interviewed the Children's Advocacy interviewer. So she knows nothing about the case, and she didn't even hear the witness' testimony.
>
> So there's nothing that she could that would—nothing she could reasonably do to bolster the witness' testimony because she doesn't even know what it is.
>
> The fact that she testifies to things that might be similar to those things experienced by the witness is not considered bolstering.

Finally, the circuit court found the prejudicial effect of Galloway-Williams's testimony did not substantially outweigh its probative value for Rule 403 purposes. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

In the presence of the jury, Galloway-Williams testified generally about delayed disclosure, risk factors, grooming, and the behavioral characteristics of victims of abuse. She explained there are several risk factors that make children more vulnerable to abuse, including substance abuse in the home; a child's age—with younger children being more vulnerable to abuse because they depend on adults for caregiving; and a child's special needs or disabilities because such children need more assistance from adults. Finally, children with behavioral problems may be more vulnerable to abuse because "if they are troublemakers or seen as bad children and then they do make a disclosure, an outcry, sometimes they're not believed because they have a previous history of getting in trouble or making things up."

Galloway-Williams explained "grooming" referred to an adult developing a trusting relationship and might include giving a child special attention or gifts or

spending more time with the child in an effort to normalize sexual behavior. She opined that grooming could affect a child's disclosure because a child may have developed a trusting and close relationship with his or her abuser, have received special attention, or been abused by someone they loved, therefore, impacting their ability to disclose the abuse. A child might display an array of behaviors after being sexually abused, including depressive tendencies, nervousness, anxiety, self-harm, or no behavioral effect at all. Galloway-Williams discussed different disclosures, including partial disclosures, accidental disclosures, purposeful disclosures, and false disclosures—including false denials. When referencing false disclosures and false denials, Galloway-Williams explained a false denial occurs when there is known abuse yet the child denies being abused, while a false allegation occurs when a child makes a disclosure that is later determined to be unfounded. When asked if false denials or false disclosures were more common, Galloway-Williams responded, "What's more common would be the false denial where we—where a child denies that something has happened when, in fact, something did occur."

## A. Subject Matter of the Testimony and Ordinary Knowledge of the Jury

In *Jones*, 423 S.C. at 636, 817 S.E.2d at 271, our supreme court stated, "the law in South Carolina is settled: behavioral characteristics of sex abuse victims is an area of specialized knowledge where expert testimony may be utilized." *See also State v. Anderson*, 413 S.C. 212, 218, 776 S.E.2d 76, 79 (2015); *Brown*, 411 S.C. at 342, 768 S.E.2d at 251 (concluding "the unique and often perplexing behavior exhibited by child sex abuse victims does not fall within the ordinary knowledge of a juror" and, thus, the general behavioral characteristics of child sex abuse victims "are more appropriate for an expert qualified in the field to explain to the jury, so long as the expert does not improperly bolster the victims' testimony"), *abrogated on other grounds by Jones*, 423 S.C. at 637-38, 817 S.E.2d at 271 (abrogating *Brown* to the extent the court indicated it was appropriate to consider *voir dire* responses when evaluating the need for expert testimony); *see generally State v. Weaverling*, 337 S.C. 460, 474, 523 S.E.2d 787, 794 (Ct. App. 1999) ("Expert testimony concerning common behavioral characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible.").

We find Galloway-Williams's testimony on grooming, the behaviors children may display after abuse, false denials, and risk factors falls within this recognized area of expertise. *See Jones*, 423 S.C. at 636-37, 817 S.E.2d at 271 (determining an expert's testimony about delayed disclosure fell within the commonly recognized category of behavioral characteristics of sex abuse victims); *see generally Brown*,

411 S.C. at 337, 768 S.E.2d at 249 (noting the expert testified children delay disclosure for many reasons, including grooming by the perpetrator). Galloway-Williams's testimony provided context for the jury and assisted jurors in understanding how a change in a person's behavior might indicate abuse, why a child might delay disclosure, and how special attention and grooming affect a child's ability to disclose abuse. *See Weaverling*, 337 S.C. at 474-75, 523 S.E.2d at 794 (alteration by court) ("[B]oth expert testimony and behavioral evidence are admissible as rape trauma evidence to prove a sexual offense occurred where the probative value of such evidence outweighs its prejudicial effect. . . . It assists the jury in understanding some of the aspects of the behavior of victims and provides insight into the sexually abused child's often strange demeanor." (citations omitted)). Thus, the circuit court properly concluded the subject matter of Galloway-Williams's testimony was beyond the ordinary knowledge of the jury. *See Jones*, 423 S.C. at 638, 817 S.E.2d at 271 ("Whether the subject matter of a proposed expert's testimony is outside the realm of lay knowledge is a determination left solely to the trial judge and his or her sense of what knowledge is commonly held by the average juror.").

## B. Reliability

Acker next asserts the circuit court erred in finding Galloway-Williams's testimony reliable by erroneously relying on her education, training, and experience, which related to her qualifications, not the reliability of her testimony. He contends the State failed to establish the testimony itself was reliable and analogizes this case to those in which the circuit court failed to make any reliability determination at all. Additionally, he argues Galloway-Williams did not provide the necessary specific research, publications, training information, or case studies on which she relied to support her testimony and failed to identify the unique characteristics she testified were associated with child sexual abuse.

"All expert testimony must satisfy the Rule 702 criteria, and that includes the trial court's gatekeeping function in ensuring the proposed expert testimony meets a reliability threshold for the jury's ultimate consideration." *State v. White*, 382 S.C. 265, 270, 676 S.E.2d 684, 686 (2009). Rule 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. "There is no formulaic approach for determining the foundational requirements of qualifications and reliability in non-scientific evidence." *Chavis*, 412 S.C. at 108, 771 S.E.2d at 339.

In *Chavis*, the defendant appealed his convictions for multiple crimes involving unlawful sexual conduct with a minor, arguing the circuit court erred in allowing an expert witness to testify about a forensic interviewer's report because the State failed to demonstrate the expert's reliability. 412 S.C. at 104, 107, 771 S.E.2d at 337, 339. Our supreme court found that although the expert had "extensive experience and training," the State failed to show the expert's individual reliability because there was no evidence establishing the expert's conclusions were accurate. *Id.* at 107-08, 771 S.E.2d at 339. The court explained that "evidence of mere procedural consistency does not ensure reliability without some evidence demonstrating that the individual expert is able to draw reliable results from the procedures of which he or she consistently applies." *Id.* at 108, 771 S.E.2d at 339. Thus, the court concluded the circuit court erred in allowing the expert's testimony because the threshold reliability requirement of Rule 702 was not met. *Id.*

The *Jones* defendant appealed his convictions for first-degree CSC with a minor, second-degree CSC with a minor, and two counts of lewd act upon a child, arguing the circuit court erred in permitting the same child abuse dynamics expert involved in this case, Galloway-Williams, to testify because there was no evidence supporting the reliability of her opinions, including whether the opinions were subjected to peer review. 417 S.C. at 326, 331, 790 S.E.2d at 21, 23, *aff'd as modified by Jones*, 423 S.C. at 631, 817 S.E.2d at 268. However, this court distinguished *Chavis* because the *Jones* expert was not qualified as a forensic interviewer and did not discuss any conclusions garnered from the RATAC[6] method of interviewing victims; rather, the expert testified in general terms about child sex abuse dynamics, including delayed disclosure and the responses of non-offending caregivers. *Id.* at 332, 790 S.E.2d at 24. This court concluded the record supported the circuit court's reliability finding because the expert "testified that her methods were published in articles in professional journals and trade publications, subjected to peer review, uniformly accepted and recognized within the area of child sex abuse experts and professionals, and relied upon for sexual abuse counseling and treatment." *Id.* at 333, 790 S.E.2d at 24. The court further found the expert testified she had given multiple presentations on the role of non-offending caregivers and delayed disclosure, her employer applied the principles she described in her testimony, and other counselors used said principles. *Id.* at

_____

[6] RATAC stands for Rapport, Anatomy, Touch, Abuse Scenario, and Closure. Our supreme court acknowledged in *Kromah*, 401 S.C. at 357 n.5, 737 S.E.2d at 499 n.5, "that RATAC is not without its critics." *See Chavis*, 412 S.C. at 107 n.6, 771 S.E.2d at 339 n.6.

333, 790 S.E.2d at 24-25. Accordingly, the court concluded the circuit court did not abuse its discretion in performing its gatekeeping function as to reliability. *Id.* at 333, 790 S.E.2d at 25.

Our supreme court affirmed as modified in *Jones*, finding *Chavis* distinguishable because the *Jones* expert did not testify about the RATAC protocol or forensic interviewing methods. 423 S.C. at 639, 817 S.E.2d at 272. Rather, "her testimony focused on explaining the concept of delayed disclosure and the role of nonoffending caregivers in the dynamics of sexual abuse." *Id.* Regarding the reliability of the expert's testimony, the court noted the expert testified: (1) she could provide citations to the court identifying articles serving as the basis for her opinions; (2) "her opinions were supported by peer-reviewed professional journals and trade publications, all of which were uniformly accepted and recognized by child sexual abuse experts and professionals"; (3) "she participates in the peer review process and has given numerous presentations on the subject"; and (4) "she was unaware of any organizations that found her methods unreliable and that, out of all cases involving delayed disclosure of child abuse, statistically two to four percent are considered false allegations." *Id.* Thereafter, the court concluded the expert "met the threshold reliability requirement when she testified her methods were published in professional articles and trade publications, subject to peer review, and uniformly accepted and relied upon by other professionals in the field." *Id.* at 640, 817 S.E.2d at 272.

Similarly, we find the circuit court did not abuse its discretion in determining Galloway-Williams's testimony here satisfied the reliability threshold. As in *Jones*, *Chavis* is distinguishable because Galloway-Williams was not qualified as a forensic interviewer and did not testify as to the specifics of this child's disclosure. Instead, she testified as a blind expert on child sexual abuse dynamics, addressing general concepts and characteristics of victims in such cases. Her testimony was based on her experience and the research conducted in her field, and this research was based on case studies for which the researchers analyzed cases of known abuse to determine whether there were similarities among cases. Thus, the circuit court did not err in admitting Galloway-Williams's testimony after properly considering its reliability.

## C. Bolstering

Acker contends Galloway-Williams indirectly bolstered Child's credibility when she testified that false denials are more common than false allegations because it "suggested that the jury should believe the minor witness because children are

more likely to deny that abuse occurred than make a false allegation of abuse." Acker further challenges the admission of Galloway-Williams's testimony that children with behavioral problems are more vulnerable to abuse because they are less likely to be believed.

Galloway-Williams's testimony did not constitute improper bolstering. She was a blind expert; she never met Child or her parents, and she had no information about the circumstances of Child's case. *See e.g., Anderson*, 413 S.C. at 218-19, 776 S.E.2d at 79 ("The better practice, however, is not to have the individual who examined the alleged victim testify, but rather to call an independent expert. To allow the person who examined the child to testify to the characteristics of victims runs the risk that the expert will vouch for the alleged victim's credibility.").

First, Galloway-Williams's testimony regarding disclosures by children with behavioral problems did not improperly bolster Child's credibility because the testimony was included in her general testimony addressing multiple risk factors that make certain children more vulnerable to abuse. *See State v. Barrett*, 416 S.C. 124, 131-33, 785 S.E.2d 387, 390-91 (Ct. App. 2016) (finding an expert's testimony regarding general behavioral characteristics did not improperly vouch for the victim's credibility because she never directly or indirectly commented on the victim's veracity and truthfulness or the credibility of the victim's claims and she did not limit her testimony to only those behavioral characteristics displayed by the victim). She did not comment on Child's credibility, and she did not seek to link her general characteristics testimony to any type of behavioral reaction Child may—or may not—have exhibited. *See id.*; *Brown*, 411 S.C. at 345, 768 S.E.2d at 253 (finding the expert did not improperly bolster the victim's credibility because she testified in broad terms about the reasons victims delay disclosing abuse and she never applied her testimony to the victims in the case).

Additionally, there was no evidence that Child had behavioral problems such that others would be less likely to credit her disclosures. Rather, the testimony indicated Child did not exhibit behavioral or emotional problems until she began cutting her arms. Thus, as in *Brown*, we do not believe Galloway-Williams's general testimony in this case about children with behavioral problems potentially not being believed bolstered Child's credibility. *See State v. Cartwright*, 425 S.C. 81, 96, 819 S.E.2d 756, 764 (2018) (concluding the independent expert did not improperly bolster the victims' credibility because she never testified she believed the victims; rather, her testimony generally explained the potential reasons why children recant and the behaviors common to sexually abused children).

Nor did Galloway-Williams's testimony about false denials being more common than false allegations improperly bolster Child's credibility. As stated previously, Galloway-Williams did not testify regarding Child; rather, she testified as to the general behavioral reactions of children who have been abused, risk factors, and the concepts of grooming and delayed disclosure. Although we acknowledge Galloway-Williams's testimony could be interpreted as having insinuated Child's testimony was credible because false allegations are not as common as false denials, Galloway-Williams's statement here is distinguishable from those in cases in which our courts have found there was no way to interpret the challenged statements *other than as* bolstering a victim's credibility. *Compare State v. Makins*, 433 S.C. 494, 505, 860 S.E.2d 666, 672 (2021) (holding dual expert's testimony served foundational purpose other than to vouch for minor's credibility but cautioning that the use of "one witness as both a characteristics expert and the treatment witness is a risky undertaking" and the better practice is to use a blind witness as *Anderson* urged), *with State v. McKerley*, 397 S.C. 461, 465-67, 725 S.E.2d 139, 142-43 (Ct. App. 2012) (finding although the expert never directly stated she believed the victim, the jury could not interpret the expert's testimony in any way other than that she believed the victim was telling the truth); *see also Chavis*, 412 S.C. at 109, 771 S.E.2d at 340 (finding the circuit court erred when allowing an expert witness to testify about her recommendation that the victim "not be around the [defendant] for any reason" because this testimony could only be interpreted as indicating the expert believed the victim's allegations).

Here, Galloway-Williams never treated Child and never testified she believed Child, nor did she provide any indication that she had considered Child's specific disclosures. *See State v. Jennings*, 394 S.C. 473, 479-80, 716 S.E.2d 91, 94 (2011) (first alteration by court) (concluding the circuit court erred in admitting a forensic interviewer's report stating the victims "provide[d] a compelling disclosure of abuse" by the defendant because "[t]here is no other way to interpret the language used in the reports other than to mean the forensic interviewer believed the children were being truthful")). Galloway-Williams never linked her general statements to this case or Child's credibility. *See Brown*, 411 S.C. at 345, 768 S.E.2d at 253 (finding an expert did not improperly bolster the victim's credibility when she testified that seventy to eighty percent of children delay disclosing abuse because she never applied this statistic to the victims in that case); *see generally Weaverling*, 337 S.C. at 474-75, 523 S.E.2d at 794-95 (concluding an expert's testimony that it was very common for a victim of abuse to commit subsequent abuse on another person "simply explained the effect" of the prior abuse on the individual's subsequent conduct); *State v. Smith*, 411 S.C. 161, 172, 767 S.E.2d 212, 218 (Ct. App. 2014) (stating that although the State's question about whether

the length of the delay in the disclosure eroded the credibility of the disclosure invited vouching, there was no reversible error because the expert explained credibility and delayed reporting were unrelated and the expert did not provide an opinion about the victim's truthfulness). Because Galloway-Williams's testimony did not improperly bolster Child's credibility, the circuit court did not abuse its discretion in admitting it.

### D. Rule 403, SCRE

Acker next argues the circuit court erred in declining to find the probative value of Galloway-Williams's testimony was substantially outweighed by its prejudicial effect. Acker contends the testimony about risk factors, grooming, and behaviors exhibited by victims of abuse was not relevant and lacked probative value because it did not assist the jury in determining any fact at issue or in understanding the evidence. According to Acker, this expert testimony did not prove or disprove anything but instead, "tended to suggest a decision based on unreliable testimony that improperly suggested to the jury that the expert believed the minor witness."

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Rule 403, SCRE. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *State v. Gilchrist*, 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct. App. 1998) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). "A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances." *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014) (quoting *State v. Adams*, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct. App. 2003)).

Galloway-Williams's testimony was relevant and assisted the jury in understanding child sexual abuse victims' behavior and how children react differently to abuse: some demonstrate self-harm, depression, or anxiety, while others exhibit no outward change in behavior at all. *See Jones*, 417 S.C. at 336-37, 790 S.E.2d at 26-27 (finding the probative value of the expert's testimony outweighed its prejudicial effect because it helped the jury understand the victim's behavior and demeanor and was "crucial" in explaining why child victims "are often unable to effectively relay incidents of criminal sexual abuse"); *Brown*, 411 S.C. at 347-48,

768 S.E.2d at 254 (concluding the expert's testimony was highly probative and helped the jury understand sex abuse victims' behavior and did not unfairly prejudice the defendant); *Weaverling*, 337 S.C. at 475, 523 S.E.2d at 794 (stating behavioral evidence "assists the jury in understanding some of the aspects of the behavior of victims and provides insight into the sexually abused child's often strange demeanor").  This testimony further assisted the jury in understanding why victims delay disclosure, how close relationships can affect disclosure, and how certain factors may increase the risk of abuse.  Therefore, we agree with the circuit court that this testimony was relevant and probative.

Significantly, Galloway-Williams did not testify that *Child* displayed behaviors associated with abuse or that she harmed herself and suffered depression.  In fact, she did not—and as observed by the circuit court, could not—speak to Child's behavior at all.  Rather, she generally explained behaviors commonly exhibited by sex abuse victims, risk factors, and grooming.  Thus, we find no abuse of discretion in the circuit court's admission of this testimony.  *See* Rule 403, SCRE (stating relevant evidence is inadmissible if the unfair prejudice substantially outweighs its probative value); *Brown*, 411 S.C. at 347-48, 768 S.E.2d at 254; *Gilchrist*, 329 S.C. at 630, 496 S.E.2d at 429 ("All evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided." (quoting *United States v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989))).

## II.    Directed Verdict

Acker argues the circuit court erred in denying his motion for a directed verdict on the charge of dissemination of obscene material to a minor because the State failed to prove the videos he allegedly forced Child to watch were obscene and Child's testimony alone was insufficient to prove obscenity.  We disagree.

Section 16-15-355 of the South Carolina Code (2015) provides a person "eighteen years of age or older who knowingly disseminates to a minor twelve years of age or younger material which he knows or reasonably should know to be obscene within the meaning of Section 16-15-305 is guilty of a felony . . . ."  Material is obscene pursuant to section 16-15-305(B) if:

> (1) to the average person applying contemporary
> community standards, the material depicts or describes in
> a patently offensive way sexual conduct specifically
> defined by subsection (C) of this section;
> (2) the average person applying contemporary

community standards relating to the depiction or
description of sexual conduct would find that the material
taken as a whole appeals to the prurient interest in sex;
(3) to a reasonable person, the material taken as a whole
lacks serious literary, artistic, political, or scientific
value; and
(4) the material as used is not otherwise protected or
privileged under the Constitutions of the United States or
of this State.

S.C. Code Ann. § 16-15-305(B) (2015).  Patently offensive is defined as
"obviously and clearly disagreeable, objectionable, repugnant, displeasing,
distasteful, or obnoxious to contemporary standards of decency and propriety
within the community."  S.C. Code Ann. § 16-15-305(C)(2) (2015).  Prurient
interest is defined as "a shameful or morbid interest in nudity, sex, or excretion and
is reflective of an arousal of lewd or lascivious desires and thoughts."  S.C. Code
Ann. § 16-15-305(C)(3) (2015).  "Obscenity must be judged with reference to
ordinary adults except that it must be judged with reference to children or other
especially susceptible audiences or clearly defined deviant sexual groups if it
appears from the character of the material or the circumstances of its dissemination
to be especially for or directed to children or such audiences or grounds."  S.C.
Code Ann. § 16-15-305(D) (2015).

"On appeal from the denial of a directed verdict, [the appellate court] views the
evidence and all reasonable inferences in the light most favorable to the
State." *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014).  "The
Court's review is limited to considering the existence or nonexistence of evidence,
not its weight." *State v. Bennett*, 415 S.C. 232, 235, 781 S.E.2d 352, 353 (2016).
The case should be submitted to the jury if the State provides "direct or substantial
circumstantial evidence reasonably tending to prove the defendant's guilt, or from
which the defendant's guilt can be fairly and logically deduced." *State v. Reid*, 408
S.C. 461, 472, 758 S.E.2d 904, 910 (2014).

Child testified Acker showed her pornography on his computer in his home office,
specifically "videos of people having sex."  Viewing this evidence in the light most
favorable to the State, we find the circuit court properly denied Acker's motion for
a directed verdict. *See generally Weaverling*, 337 S.C. at 465-67, 523 S.E.2d at
789-90 (noting the victim stated the defendant showed him "dirty" magazines, a
pornographic movie, and nude photographs and the defendant was convicted of
disseminating harmful material to a minor).

### III. Rule 404, SCRE

Acker next contends the circuit court erred in allowing Grandmother to testify about a letter he wrote to her in which he admitted to having a fifty-two-year pornography addiction. On appeal, he asserts the substance of the letter constituted evidence of a prior bad act not subject to an exception to the inadmissibility mandated by Rule 404, SCRE.

Grandmother testified she and Acker remained in contact after they divorced in July 2008 and began to testify as to their correspondence. Acker objected to her testimony as irrelevant, and the circuit court indicated it would sustain the objection unless the State could "show some relevance." Grandmother then testified Acker contacted her by email and through letters or by coming to her workplace. When asked whether Acker mentioned viewing pornography in his letters, Grandmother answered, "Yes," and Acker again objected to the testimony as lacking relevance. The circuit court held a bench conference before allowing the State to proceed. The State then asked Grandmother if Acker ever mentioned viewing pornography in his letters, and Acker again objected. The circuit court overruled the objection. Grandmother responded that Acker "admitted to [her] in that letter that he had been addicted to pornography for [fifty-two] years."

At the end of Grandmother's testimony and outside the presence of the jury, the circuit court allowed Acker to state his objections more fully on the record. Acker first objected based on Rule 401, arguing any pornography addiction was irrelevant because the time period of his addiction included the majority of his life and the letter did not describe the medium of the pornography, i.e., whether it involved magazines, television, computer images, or videotapes. Acker asserted the testimony left "too much room" for speculation by the jury about the nature and extent of his addiction and the form it could take. Acker also argued that even if the testimony were relevant, it was inadmissible under Rule 403 because the testimony was "too prejudicial" since it covered a large period of time and there was no testimony as to the form of the addiction. Acker contended the testimony did not "necessarily go toward the fact that he had a propensity for showing this as a person in his mid [sixties] to a young child that is five years old." Finally, Acker argued the testimony was inadmissible under Rule 404 because the testimony constituted improper character evidence and did not satisfy any exception set forth in Rule 404. Acker requested a mistrial if the circuit court maintained its admissibility ruling.

In response, the State argued Acker's admission in the letter included the 2004-2005 timeframe during which Child claimed Acker showed her pornography and it was necessary for the State to establish the presence of obscene material to prove the dissemination charge. The State elaborated, "I think the jury can decide whether or not he showed it to that child. Him just having the pornography is not illegal. It's him showing it to the child." Thus, the State continued, his admission as to the length of his addiction was relevant to show Acker's possession of pornography during the timeframe he allegedly showed obscene material to Child.

The circuit court found the testimony admissible because it was "clearly relevant" to the dissemination charge and the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. The circuit court admitted the testimony under Rule 401 and Rule 403. The circuit court did not separately address Rule 404.

The State argues Acker's Rule 404 argument is not preserved for review because the circuit court did not rule on this ground of his argument. Although the circuit court did not expressly rule on Acker's Rule 404 argument, the circuit court addressed it by implication in overruling Acker's objection and admitting the evidence. The grounds for the objection, however, are more problematic. At trial, Acker objected to the admission of the statement in the letter to Grandmother as improper character evidence under Rule 404(a). *See* Rule 404(a), SCRE ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . " other than as set forth in certain exceptions.). Before this court, however, Acker asserts the testimony was improperly admitted under Rule 404(b) as inadmissible evidence of other crimes, wrongs, or acts. *See* Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."). As the Rule 404(b) argument was not made to the circuit court, we find it unpreserved for our review. *See State v. Adams*, 354 S.C. 361, 380, 580 S.E.2d 785, 795 (Ct. App. 2003) ("Arguments not raised to or ruled upon by the trial court are not preserved for appellate review. Moreover, a defendant may not argue one ground below and another on appeal." (citation omitted)).[7]

---

[7] Because our ruling on preservation resolves this issue, we decline to address the State's additional argument that Acker's own testimony on this point rendered Grandmother's testimony merely cumulative and therefore harmless.

For these reasons, we affirm Acker's convictions.

**AFFIRMED.**

**WILLIAMS, A.C.J., and HUFF, A.J., concur.**